## JOHN A. CRAIG *vs.* JOHN WROTH.

### JUDGMENTS.

*When an appeal will lie from an order of the Court striking out a judgment—Power to set aside judgments for fraud a common law power—Quasi Equitable powers of Courts of Law—Under what circumstances judgments will be stricken out on motion after lapse of time.*

Where a judgment is stricken out during the term at which it was rendered, no appeal will lie. But where a Court takes such action after the lapse of the term, an appeal does lie.

The power to set aside judgments upon motion, for fraud, deceit, surprise or irregularity in obtaining them, is a common law power *incident* to Courts of record in this State.

In deciding such motions after the term is past, the Court acts in the exercise of its *quasi* equitable powers, and will therefore properly consider all the facts and circumstances of the case, and require that the party making the application shall appear to have acted with good faith and with ordinary diligence.

Relief will not be granted when he has knowingly acquiesced in the judgment complained of, or has been guilty of laches or unreasonable delay in seeking his remedy.

Where a judgment has been rendered several terms anterior to the motion to strike it out, it would be contrary to a long course of established decisions to disturb it without clear and convincing proof of fraud, surprise or irregularity.

APPEAL from the Circuit Court of Cecil County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, STEWART and MILLER, J.

*John A. Craig*, P. P.

*Henry W. Archer* and *Hiram McCullough*, for appellee.

MILLER, J., delivered the opinion of the Court.

The appellant recovered a judgment against Turner and issued an attachment upon it by way of execution, which was laid in the hands of the appellee, Wroth, who was summoned as garnishee. On this, a judgment of condemnation was rendered in 1865, and on this judgment a *scire facias* to revive it, was issued in June, 1872. In March, 1874, the appellee moved to strike out the judgment and filed as reasons for his motion, that it was obtained by fraud, surprise, and mistake. This motion was heard and argued in the Court below in October, 1874, and then held under *curia* until March, 1876, when the Court sustained the motion, ordered the judgment to be stricken out and the case brought up by regular continuances, and from that order this appeal is taken.

The appellee's counsel has moved to dismiss the appeal upon the ground that the setting aside of the judgment was a matter of discretion in the Court, and therefore not the subject of an appeal. If the judgment had been stricken out during the term at which it was rendered, this position would be sound. *Rutherford vs. Pope*, 15 *Md.*, 579. But where a Court takes such action after the lapse of the term an appeal lies. This has been frequently decided, and we need refer only to *Graff & Gambrill vs. Merchants' & Miners' Trans. Co., Garn. of Bernard,* 18 *Md.*, 364, where, as in this case, there was an order striking out a judgment of condemnation on an attachment, after the lapse of the term, and upon full consideration it was held the appeal would lie. The motion to dismiss is therefore overruled.

The power to set aside judgments upon motion, for fraud, deceit, surprise or irregularity in obtaining them is a com-

mon law power *incident* to Courts of record in this State, and was not *conferred* upon them by the Act of 1787, ch. 9, sec. 6, which is partially but not fully embodied in section 38, Art. 75 of the Code. This legislation *assumes* that the power resides in the Courts, and provides for the entering of continuances when it is put in force. In deciding such motions made after the term is past, the Court acts in the exercise of its *quasi* equitable powers and will therefore properly consider all the facts and circumstances of the case, and require that the party making the application shall appear to have acted in good faith and with ordinary diligence : relief will not be granted when he has knowingly acquiesced in the judgment complained of, or has been guilty of *laches* and unreasonable delay in seeking his remedy. *Kemp & Buckey vs. Cook & Ridgely*, 18 *Md.*, 130 ; *Montgomery vs. Murphy*, 19 *Md.*, 576, and in the recent case of *Sarlouis vs. Fireman's Ins. Co., Garn. of Siar*, decided at April Term, 1876, we have said " where a judgment has been rendered several terms anterior to the motion to strike it out, it would be contrary to a long course of established decisions to disturb it, without clear and convincing proof of fraud, surprise, or irregularity." These rules must be applied in the case now before us, and to that end we have considered the testimony contained in the record on which the Circuit Court based its action.

The interval between the recovery of the judgment in 1865, and the motion in 1874 is nearly nine years, but the difficulty arising from this lapse of time is, we think, clearly and satisfactorily cleared up by the testimony. The judgment it must be remembered is a judgment of condemnation against a garnishee in an attachment, and not for any cause of action as between the appellant and the appellee. The latter in his testimony deposes that before the attachment was levied on him, he saw the appellant who asked him if he had any money belonging to Turner, to which he replied, that he had not, and that

he did not owe Turner a cent, and thereupon the appellant said he was glad he had met him, and that he would tell the sheriff not to serve the attachment, as it would save trouble and expense: that in a day or two after this conversation the sheriff did serve the writ on him, and he shortly thereafter saw the appellant again and reproached him for not having stopped the service of the writ, to which the appellant replied, that he had not seen the sheriff, but said "I will see him and tell him not to return it:" that he rested upon this assurance of the appellant, gave no further attention to the matter, and supposed it was dropped, and never heard anything to the contrary until the *scire facias* to revive the judgment was served on him in the summer or fall of 1872, a short time before the term of the Court to which it was returnable. In this he is supported by the deposition of his brother, who swears that after the existence of the judgment had been discovered, in June, 1872, the appellant admitted in the office of Mr. McCullough, in the presence of witness and the appellee, that about the time the attachment was issued or shortly thereafter he had called upon the appellee to know if he had any money in his hands belonging to Turner, and that the appellee told him he had none, and that he promised to withdraw the attachment or stop the proceedings, and said he thought it had been done, as he did not believe Wroth had any money belonging to Turner, but looking over the docket for something else some years afterwards, he found a judgment on the attachment had been entered against Wroth, on which he had been told he could make the money and he intended to do so: that he further admitted that he had promised Wroth that he would direct the sheriff not to return the attachment, but that after this he had been told by another party that Wroth had denied having the money in order to save it for Turner, and he then said nothing to the sheriff. Mr. McCullough also testifies to the same effect,

viz., that in one of the many interviews he had with the appellant he admitted he did not believe Wroth had any of Turner's money, when the attachment was served on him, and that he had promised Wroth he would direct the sheriff to return the attachment not served, but did not give the direction, because he afterwards learned from some one that Wroth had told him he had no money of Turner's in order to save it for Turner.

Mr. Jones the original counsel for the appellant, says he directed the clerk to enter judgment of condemnation *nisi* on the sheriff's return, but never did anything further in the case, and never had any further instructions, nor heard anything more from the appellant concerning it, until about the time the *scire facias* was issued, when the appellant called on him and directed the writ to be issued, which was done, and witness at the next Spring Term struck out his appearance and retired from the case.

The testimony of these witnesses outweighs in probative force the denials of the appellant and very satisfactorily establishes the fact that he did make to the appellee the promise to stay proceedings under the writ to which they have testified, and that he did not afterwards inform the appellee of his change of purpose. The latter was thus left to rest upon this assurance and promise, and was thereby lulled into security and inaction. That being so, it is clear the judgment was obtained by *surprise*, if not by fraud. And this conclusion is fortified by that part of the appellant's own testimony, in which he states and admits that from his conversation with the appellee, and from the fact that shortly after the return of the writ, the clerk who searched the docket at his request could find no judgment, he concluded the appellee had released himself from the attachment, and he took no steps in, and gave himself no further concern about the matter. In fact when the judgment was accidentally discovered in June, 1872, its existence was as much a surprise to him as it was

to the appellee. This explains most fully and clearly the delay from the rendition of the judgment in 1865, to the issuing of the *scire facias* upon it in 1872. As soon as this latter writ was issued and the existence of the judgment thereby made known to the appellee, the proof shows that he and his counsel, Mr. McCullough, commenced efforts to compromise the case and to effect an amicable settlement of it, and that in these efforts Mr. McCullough was acting as the friend and adviser of both parties, and as soon as it became apparent no such settlement could be effected, the motion to strike out the judgment was made. This satisfactorily accounts for all further delay in making the motion. Under these circumstances and upon this proof we are clearly of opinion, it would be inequitable to allow this judgment to be enforced and we therefore affirm the order striking it out.

*Judgment affirmed.*

(Decided December 6th, 1877.)