The plaintiff instituted suit in said county to recover on a judgment rendered in her favor against defendant in the State Circuit Court of South Dakota for the sum of $1,646, said court having jurisdiction of the cause and parties at the time the same was rendered.
Defendant answered, alleging fraud in procurement of said judgment, in that while said suit was pending in the Dakota court, there being some matters of account and adjustment between plaintiff and defendant, the defendant paid several hundred dollars on the claim, and plaintiff and defendant then and there had a written agreement that *Page 700 
no further steps should be taken in said suit without notice first served on defendant or his attorneys; that plaintiff, in violation of said agreement, had induced the Dakota court to proceed further and render the judgment sued on, without allowing credit for payments made, and without any accounting had, and by serving pretended notice on (733) an attorney known by plaintiff not to represent defendant at the time, and this with a fraudulent design and purpose, etc.
Defendant further answered, and set up a counterclaim alleging, in substance, that plaintiff, through her attorney and agent for the purpose, one Edwin Van Cise, had collected from certain real estate belonging to defendant, situate in Deadwood, South Dakota, rents at the rate of $180 per year for about seven years next before action brought, for which said sum plaintiff was accountable to defendant.
Plaintiff replied, and averred that defendant should not be allowed to further plead fraud in the procurement of the South Dakota judgment, for the reason that defendant had appeared in said court and formally applied by motion to set aside said judgment on the ground of fraud and on the same facts as now contained in the answer, and on the hearing the South Dakota court denied the application.
Plaintiff replied, and averred that defendant should not be allowed to further plead fraud in the procurement of the South Dakota judgment, for the reason that defendant has appeared in said court and formally applied by motion to set aside said judgment on the ground of fraud and on the same facts as now contained in the answer, and on the hearing the South Dakota court denied the application.
Plaintiff replied further, that this counterclaim for $1,260 set up by defendant was involved and embraced in a suit now pending in South Dakota, said court having jurisdiction of the cause and parties, and in which Edwin Van Cise, as trustee, was seeking for a final account and settlement as trustee.
The present cause coming on for trial, and the plaintiff having offered in evidence the record of the South Dakota suit showing that plaintiff had regularly obtained the judgment sued on, and that defendant had moved to set aside the judgment for fraud, and the motion had been denied, the court, being of opinion that defendant was thereby precluded from further averment of fraud in impeachment of the South Dakota judgment, entered judgment as follows:
This cause coming on for hearing at this time before the undersigned judge, and a jury, and a jury having been impaneled, and the pleadings read, and the plaintiff having introduced in evidence the record of the proceedings, certified from the Eighth Judicial Circuit of the Circuit Court in and for Lawrence County, South Dakota, including the order to vacate the judgment theretofore rendered in that court, the same being the judgment sued upon in this action, with the affidavit of defendant, and the affidavits thereto attached (copies of the affidavits, etc., filed in the South Dakota court in the application to vacate said judgment), and the court being of the opinion that said order of said South Dakota court refusing to vacate said judgment is a bar to defendant in this action in this court: *Page 701 
It is now considered and adjudged by the court that the (734) plaintiff have and recover of the defendant judgment for the sum of said judgment, to wit, the sum of $1,666.45, with interest from the date of rendition, or from 2 June, 1908, until paid, together with the costs of this action, to be taxed by the clerk.
 JAMES L. WEBB, Judge Presiding.
Whereupon defendant excepted and appealed.
after stating the case: Under our system of procedure it is permissible for a defendant to plead fraud in the procurement of a judgment rendered against him in the courts of a sister State. The question has been so recently and fully discussed in the case of Mottu v. Davis, 151 N.C. 237, that we do not think further comment is at this time either necessary or desirable.
We agree with his Honor below, however, that the defendant is precluded from availing himself of any such plea in the present case by the judgment of the South Dakota court denying his application to set aside the judgment on that ground, a position undoubtedly correct, if, on the facts as they now appear, the South Dakota court had jurisdiction to entertain and determine the question of fraud as presented in defendant's application. The proceedings were introduced showing that defendant had personally appeared in the Dakota court and moved to set aside the judgment for fraud, and an averment of substantially the same facts which he now sets up in his answer by way of defense, and that court had entered judgment denying the motion. No reasons for this denial are set forth in the judgment or elsewhere, and no evidence was introduced as to the law of South Dakota, statutory or otherwise, bearing on the subject. The question presented must, therefore, be decided on the principles of the common law, this being in accordance with the presumption ordinarily obtaining in such cases.Moody v. Johnston, 112 N.C. 798-801; Brown v. Pratt, 56 N.C. 202. South Dakota having been a part of the Louisiana Purchase, it might be suggested that a different presumption would obtain; but considering the facts and conditions which prevailed when that State was settled, the principle is established as stated.
Thus in Moody v. Johnston, supra, it was said:
"In the absence of any judicial knowledge of the statutory law of another State, the courts of this State must act upon the presumption that the common law of England, as modified by statutes passed *Page 702 
(735) previous to our separation and so far as they are consistent with the genius of our republican institutions, prevailed in the original colonial States and all other States formed primarily by emigration from them."
It will be noted that the fact of emigration from a country having its jurisprudence based upon the common law and its doctrines is given weight rather than the territorial placing of the new country — that is, where the movement was principally into an unsettled portion of the new territory, and at a time when the same was without government of a civilized community. The distinction being very well stated in the case ofNorris v. Harris, 15 Cal. 226, in which, among other things, it was held:
"2. In the absence of proof to the contrary, the common law is presumed to exist in those States of the Union which were originally colonies of England, or were carved out of such colonies.
"3. The same presumption prevails as to the existence of the common law in those States which have been established in territory acquired since the Revolution, where such territory was not, at the time of its acquisition, occupied by an organized and civilized community, but where the population, upon the establishment of government, was formed by emigration from the original States."
And on this subject, Chief Justice Field, delivering the opinion, said:
"A similar presumption must prevail as to the existence of the common law in those States which have been established in territory acquired since the Revolution, where such territory was not at the time of its acquisition occupied by an organized and civilized community; where, in fact, the population of the new State upon the establishment of government was formed by emigration from the original States. As in British colonies, established in uncultivated regions by emigration from the parent country, the subjects are considered as carrying with them the common law, so far as it is applicable to their new situation, so when American citizens emigrate into territory which is unoccupied by civilized man, and commence the formation of a new government, they are equally considered as carrying with them so much of the same common law, in its modified and improved condition under the influence of modern civilization and republican principles, as is suited to their new condition and wants."
Applying, then, the doctrine as indicated, courts administering justice according to course and practice of the common law, would not, as a rule, entertain a proceeding to disturb a final judgment by motion (736) made after the term in which it was rendered; to effect such a purpose a bill in equity was generally required. Brinsonv. Schultan, 104 U.S. 410; Mock v. Coggins, 101 N.C. 366. *Page 703 
The rule stated, however, does not apply when on the face of the record, or otherwise, it was made to appear that a judgment had been entered contrary to the course and practice of the court, including also all cases where errors would be corrected by writs of error coram nobis or vobis. The scope and purpose of these writs, it seems, being the same, the former being the proper designation when the proceedings were heard in the Court of King's Bench, where the monarch was presumed to be present, and the second when the matter was carried on in courts of lesser dignity, but having full jurisdiction. The power to correct errors by means of these writs was very generally regarded as inherent in common-law courts of general jurisdiction; and, wherever it formerly prevailed, the same results may be obtained in modern practice by means of a motion. In systems like ours, where law and equity are combined, and relief administered in one and the same jurisdiction, the power is universally exercised, and, when not regulated by statute, there is a disposition and tendency to extend its scope and application. Brinson v. Schultan, supra; Craig v. Wroth,47 Md. 281; 5 Enc. Pl. Pr., pp. 27, 28, 30; 7 Enc. U.S. Supreme Court Rep., 592.
In 7 Enc., S.C. R., it is said: "It is believed to be the settled modern practice that in all instances in which irregularities could formerly be corrected upon a writ of error coram vobis or audita querela, the same objects may be effected by motion to the courts as a mode more simple, more expeditious, and less fruitful of difficulty and expense."
In Enc. Pl. Pr., supra, the author says: "The office of the writ ofcoram nobis is to bring the attention of the court to and obtain relief from errors of fact, such as death of either party pending the suit and before judgment therein; or infancy, where the party was not properly represented by guardian, or coverture, where the common-law disability still exists, or insanity, it seems, at the time of the trial; or a valid defense existing in the facts of the case, but which, without negligence on the part of the defendant, was not made, either through duress or fraud or excusable mistake; these facts not appearing on the face of the record, and being such as, if known in season, would have prevented the rendition and entry of the judgment questioned."
And further: "Notwithstanding occasional statements that (737) the writ of coram nobis has `fallen into desuetude,' and that `redress obtained through its aid is now sought by motion,' it was a part of the common law received from the mother country, and, when not specially abrogated by statute, still remains a factor in modern practice.
"Proceedings of like nature, under whatever name, partake of the same underlying principles in practice." *Page 704 
In Craig v. Wroth, supra, it was held: "That the power to set aside judgments upon motion for fraud, deceit, surprise or irregularity in obtaining them, is a common-law power, incident to courts of record."
And these principles have been upheld and applied in numerous and well-considered decisions: Tucker v. Jarress, 59 Tenn. 333; Crawford v.Williams, 31 Tenn. 341; S. v. Calhoun, 50 Kan. 523; Marble v. Vanhorn,53 Mo. App. 361. See, also, McIntosh v. Commissioners, 13 Kan. 171;Thompson v. Council, 31 Or. 231; Browning v. Roane, 9 Ark. 354; Bounse v.Barker, 1 Greene, 263.
Our own statute on the subject, Revisal, sec. 513, limiting such application to a period of one year from rendition of the judgment, is, therefore, restrictive on the powers inherent in common-law courts of general jurisdiction.
The case of Whitney v. Haggard, 18 S.D. 490, while not introduced as evidence of the law of that State, in nowise militates against the position stated. In that case the allegations in impeachment of the judgment extended both to the judgment itself and the motion to set the same aside, and so is distinguished from the case before us, and this decision inWhitney v. Haggard gives clear intimation that the court had jurisdiction to dispose of the question presented by motion.
This being the doctrine applicable, on the facts as they now appear, the judgment of the Dakota court, as heretofore stated, denying defendant's application to set aside the original judgment on the ground of fraud, will preclude all further inquiry on that question, and render the latter judgment an estoppel of record as to all matters embraced in the pleadings which may be considered as material to its rendition. Turnage v. Joyner,145 N.C. 81; Mfg. Co. v. Moore, 144 N.C. 527; Tuttle v. Harrill,85 N.C. 456.
While we thus uphold his Honor's ruling in disallowing further inquiry on this issue of fraud, we think there was error in the judgment rendered, for the reason that the answer contains a demand against plaintiff by reason of rents received from property belonging to defendant, and for which plaintiff is alleged to be personally accountable. True, plaintiff replies that this is a matter now being litigated between (738) these parties in the courts of South Dakota, having jurisdiction both of the cause and parties; but no proof was offered on this issue, and if there had been, the weight of authority is to the effect that the pendency of another action for the same cause in the courts of another State is not a bar to judicial proceedings here. 1 Enc. Pl. Pr., 764; and our own Court has so held. Sloan v. McDowell, 75 N.C. 29.
It may be that on fuller investigation and inquiry the receipt of the rents can be shown to have been under such circumstances that they amount to a payment on plaintiff's note, and may be included in the *Page 705 
estoppel of record arising from the judgment; but the facts, as they thus far appear, are not such as to justify the Court in holding, as a matter of law, that these rents are necessarily disposed of by the judgment. The demand is set up in a counterclaim, and may be available as such under the decision of Tyler v. Capehart, 125 N.C. 64, in which it was held as follows:
"1. A judgment is decisive of the points raised by the pleadings, or which might be properly predicated upon them; but does not embrace any matters which might have been brought into the litigation, or causes of action which the plaintiff might have joined, but which in fact are neither joined nor embraced by the pleadings.
"2. Although the present cause of action might have been set up as a second cause of action in a former suit, but was not, it was not actually litigated, and was not `such matter as was necessarily implied therein,' the plea of res judicata will not avail."
The cause, therefore, must be remanded for further inquiry on defendant's counterclaim, and to that end the judgment is set aside and a new trial ordered.
New trial.
Cited: Harden v. R. R., 157 N.C. 247; Roberts v. Pratt, 158 N.C. 52;Massie v. Hainey, 165 N.C. 177; Cox v. Boyden, 167 N.C. 321; Moody v. Wike,170 N.C. 544.