SARAH A. LYMAN, W. W. LYMAN AND OTHERS, EX PARTE, v. SOUTHERN
                              COAL COMPANY.

(Filed 24 May, 1922.)

**1. Partition—Sales for Division—Commissioners—Contracts of Sale—
Purchasers—Wrong Reports—Motion in Cause—Statutes.**

A commissioner appointed for the sale of land in proceedings for partition, after confirmation of sale to a private purchaser, filed a petition in
the cause after notice alleging in effect that in addition to the purchase
price he had reported, the purchaser had agreed to pay a larger sum to
include his commission, etc., and had paid only the smaller sum, reported
and confirmed, and refused to pay the balance. as agreed after having
received the deed from the clerk's office, where it had been deposited:
*Held,* upon demurrer, the allegations of the petition must be considered as
true, and it was reversible error for the trial judge to sustain the demurrer, and not require an answer to be ·filed to set the matters at issue
for the purpose of proceeding to determine the controversy. C. S., 621.

**2. Same—Judgments—Imposition on the Courts.**

Where the commissioner for the private sale of lands for division has
withheld from the knowledge of the court the actual price the purchaser
has agreed to pay, and reported a lesser sum, which the court has confirmed by final judgment, it is an imposition on the court, and will not
conclude it from reopening the case on the petition of the commissioner
in the cause, after notice, and affording the proper relief.

**3. Partition—Sales for Division—Commissioners—Commissions—Agreement of Parties—Courts—Reports.**

The court will not permit the commissioner and parties in interest in
proceedings to sell land for division among tenants in common, to fix
among themselves without its knowledge the compensation of the commissioner, especially where the interests of minors are involved, and
impose upon the court by the commissioner's reporting the purchase price
in a net sum after deducting the agreed commissions, it being within the
province of the court to allow such commissions as it may deem right and
proper, and pass upon the sufficiency of the purchase price of the lands
with all the facts before it.

APPEAL by petitioners from *McElroy, J.,* 21 December, 1921, from
BUNCOMBE.

This is a petition in the above entitled cause, it being a proceeding
before the clerk of the Superior Court for partition, in the following
terms:

The petition alleges that William W. Lyman, the father of the petitioner, W. W. ·Lyman, Jr., owned the land mentioned in the petition
since the death of his father, on 13 December, 1893. From that date
till W. W. Lyman's death, on 7 February, 1921, he having always been
a resident of California, his brother, the petitioner, A. J. Lyman, had
looked after his interests in regard to the property, paying the taxes,
etc., conducting a large amount of correspondence, etc., for which he had

received no compensation. On the death of W. W. Lyman the property descended to the petitioners, W. W. Lyman, Jr., a son, and the petitioners, Theodore B., *et al.,* children of a deceased son, Theodore B. Lyman, subject to the dower of his widow, the petitioner, Sarah A. Lyman. On 15 July, 1921, the petitioners (other than A. J. Lyman), the widow and heirs of W. W. Lyman, filed their petition with the clerk of the Superior Court of Buncombe County for a sale of the property for partition. The petitioner, Sarah A. Lyman, the widow, was over 80 years of age, and the children of Theodore B. Lyman, deceased, were under age, and W. W. Lyman, Jr., who was 36 years of age, was the only one of the owners of said property who was of sufficient business experience to transact business in regard thereto. He and A. J. Lyman conducted the correspondence stated in the petition, from which it appears that W. W. Lyman, Jr., on behalf of himself and his coöwners, agreed to receive net for the property $21,000, and to allow A. J. Lyman, in view of the long period of gratuitous service rendered by him to his brother, as above stated, $2,000 of the $23,500 hereinafter mentioned, A. J. Lyman agreeing not to deduct any part of the $21,000 for his compensation. A. J. Lyman secured the assistance of J. C. Penland, a real estate broker, agreeing to pay Penland $500; and as a result of their coöperation the appellee, the Southern Coal Company, offered by letter to pay $23,500 for the property, "$5,500 to be paid on the delivery of the deed, the remainder of the purchase price to be paid in three equal installments of $6,000 each, evidenced by notes." Thereupon A. J. Lyman, on 23 August, 1921, wrote W. W. Lyman, Jr., advising him that he had "got the coal people up to $23,000" for the lots, and saying that, "In view of my marked success in securing this fine figure, I want you to allow me $2,000 as compensation, which I feel is but fair and just. Had I closed for the $21,000 you would have received less than $20,000." To which W. W. Lyman, Jr., replied, on 14 September, 1921, "We have agreed to accept your figure for the commission. Your proposition is not beyond reason." It will be observed that A. J. Lyman in his letter stated $23,000 as the purchase price, instead of $23,500. The reason for doing this was that he regarded the agreement between him and Penland as to the $500 as personal, and therefore did not think it necessary to go into an explanation of that in his correspondence with W. W. Lyman, Jr. As to the latter, the proposition was correctly stated in A. J. Lyman's letter to him, that is, that the purchase price would be $23,000, out of which the owners, represented by W. W. Lyman, Jr., agreed to pay him $2,000. This $500 the coal company has paid (to Penland), in addition to the $21,000 mentioned in the decree of sale. Thereupon A. J. Lyman reported to the Superior Court that he had received an offer of $21,000 for the property, $3,000 of said $21,000 to

be paid in cash, the balance in equal installments of $6,000 each, it being his understanding that the additional $2,500 to be paid by the Southern Coal Company would be paid by it to him, and that he would receive $2,000 of it for himself, pursuant to his agreement to that effect with W. W. Lyman, Jr., and the other $500 he would pay to Penland, not intending, as has heretofore been stated, to ask for any allowance for his services as commissioner out of the $21,000. The clerk, on 23 September, 1921, made a decree authorizing A. J. Lyman, as commissioner, "to sell said lots at private sale for not less than said sum ($21,000) on the terms stated in his report." The Southern Coal Company was not named as the prospective purchaser either in the report of A. J. Lyman, commissioner, or in the decree of sale just mentioned. The decree of sale provided that, "Upon the payment into office of the clerk of this court of the cash payment of $3,000, and the execution by the purchaser of notes for the deferred payments, and a deed in trust in form satisfactory to the commissioner, and said clerk securing the payment of said notes, the commissioner aforesaid is hereby authorized to execute a deed conveying said property to the purchaser in fee simple. And this proceeding is retained for further directions."

A. J. Lyman, as commissioner, then executed a deed, 26 October, 1921, conveying the property to the Southern Coal Company, who paid to the clerk of the court $2,500, and A. J. Lyman also paid to the clerk the $500 which he received from the coal company with its letter of 23 August, 1921, and the coal company deposited with the clerk its notes for $18,000. The manner by which this deed came into the possession of the Southern Coal Company is stated in paragraphs 12, 13, and 14 of the petition, as follows:

"12. It was not the intention of the said A. J. Lyman to deliver the said deed until the Southern Coal Company had paid in cash, in addition to said $500, the further sum of $5,000, $3,000 of which was to be paid to the clerk and the other $2,500 to A. J. Lyman, $500 of the same to be paid to J. C. Penland and $2,000 to himself, as hereinbefore set forth.

"13. That when the said A. J. Lyman tendered the deed to the party who was acting in the matter as attorney for the Southern Coal Company, the latter informed A. J. Lyman that the matter could not be closed because of the absence of Bernard Elias, the secretary of the Southern Coal Company, and suggested that Lyman deposit the deed with the clerk, who would deliver the same to the Southern Coal Company upon its compliance with the said decree.

"14. A. J. Lyman complied with this suggestion, and left the deed with the clerk, and thereafter the Southern Coal Company received the deed from the clerk."

The coal company, having thus secured possession of the deed, refused to pay the additional $2,500—which would make the $5,500 to be paid on the delivery of the deed, according to their agreement—but it did, after thus getting possession of the deed, pay, on 8 November, 1921, $250 to Penland, and later paid Penland an additional $250, but it has refused to pay the additional $2,000 which it is necessary for it to pay in order to comply with its agreement for the payment of "$5,500 to be paid on the delivery of the deed." The owners of the property, in consequence of this refusal on the part of the coal company, on 7 December, 1921, filed their petition in which they set forth the facts and asked the court "to make such order herein as may be according to justice and right, and that the unpaid part, to wit, $2,250, of the $5,500 to be paid on the delivery of the deed be paid as the court may direct by the Southern Coal Company either to A. J. Lyman, or else into the office of the clerk of the court for the benefit of the owners of said real estate; and that said real estate be charged with a lien for the payment thereof, with interest from 26 October, 1921, and be sold by decree of this court if said sum be not paid"; $250 was paid to Penland by the coal company after the filing of this petition.

The agreement between the parties as to the sale and the division of the proceeds was not reported to the court or known to it, and it was kept in ignorance of it.

The Southern Coal Company, by leave of the court, entered a special appearance, and moved to dismiss the petition upon several grounds stated in the written motion. :

The clerk allowed the motion, and dismissed the petition, whereupon the petitioners appealed to the court in term, which affirmed the judgment of the clerk, the material part of the judgment being as follows:

"1. That the said A. J. Lyman agreed with the parties who owned the real estate mentioned in the record that he would not ask for any commission for his services as commissioner out of the $21,000 mentioned in the said petition—see paragraphs 9 and 10 thereof—and the entire $21,000 goes to the owners of the real estate mentioned in said petition. Unless the Southern Coal Company is required to pay the additional $2,500, as prayed for in said petition, said A. J. Lyman will get no compensation for his services herein as commissioner. No part of the $3,000 (part of said $21,000) already paid by the Southern Coal Company has been paid to A. J. Lyman, nor has any order been made by the court for the payment of any part thereof to him, and A. J. Lyman does not intend to ask the court to allow him any part of said $21,000, it being understood between him and W. W. Lyman, Jr., the latter acting in behalf of himself and his coöwners of said real estate, as shown

by the correspondence set forth in said petition, that none of the $21,000 would be used for the payment to A. J. Lyman of any commission.

"2. That the Southern Coal Company has, since 8 November, 1921, paid to J. C. Penland $250, in addition to the $250 paid by it to said Penland, as stated in paragraph 6 of the petition, herein verified 7 December, 1921.

"Upon consideration of the record, and on the facts therein appearing and herein found, the motion of the Southern Coal Company to dismiss the petition, verified 7 December, 1921, is sustained, and the clerk's order of 20 December, 1921, in that behalf is hereby affirmed."

The petitioners duly excepted and appealed to this Court.

*F. W. Thomas for plaintiffs.*
*J. W. Haynes for defendant.*

WALKER, J., after stating the case: There was error in dismissing the proceeding, upon the special appearance. The court should have ordered the money to be paid into court, or to the commissioner appointed to make the sale, unless the petition was answered and the allegations thereof denied, which the respondents may now be allowed by the court to do. When the facts are ascertained in some way, according to the course and practice of the court, the latter may then proceed to declare the rights of the parties and enter judgment accordingly. If the bid for the land at the sale was $23,500, the purchaser was liable for that amount upon a confirmation of the sale, the question of commissions for making the sale being one for the court and not for the parties to determine. The court, speaking of the summary remedy against purchasers at public sales, under the statute (Rev. Code., ch. 31, sec. 129), said in *Ex parte Cotten,* 62 N. C., 81: "The Declaration of Rights provides that in all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the people, and ought to remain sacred and inviolable. What controversy did the petitioner have which he had the right to have determined by a jury? In a proper proceeding for the purpose, the court of equity had ordered the sale of property, and he became the purchaser at a certain price, and promised to pay the amount at a given day. He failed to pay, and the court had the power to attach him for a contempt for not paying. The proceedings of the court could be obstructed without end if, in attempting to enforce its judgments and decrees, the person against whom they are to be enforced could stop the proceedings until he could make up a controversy with the court, and have it tried by a jury. So, in this case, certain persons sought the aid of the court of equity to sell their property; the court ordered the sale, and the petitioner bought, and now seeks to stay the proceedings of the court of equity in that case until another

suit can be instituted against him, in which a jury can determine whether he ought to pay. The constitutional provision was certainly never intended to apply to a case like this. As a substitute for an attachment by which a court of equity can enforce all its decrees, a milder remedy is provided in the aforesaid statute, by notice and judgment on motion. And that statute is not unconstitutional." The provision of the Rev. Code, cited above, has been brought forward in the Code (sec. 941), in the Revisal of 1905 (sec. 1524), and in Consolidated Statutes (sec. 621). *Lackey v. Pearson,* 101 N. C., 651, where *Chief Justice Smith* discusses very fully the procedure in such cases, citing *Ex parte Cotten, supra; Lord v. Meroney,* 79 N. C., 14, and other cases. *Hudson v. Coble,* 97 N. C., 260, where the same *Chief Justice* again states the proper practice, citing *Rogers v. Holt,* 62 N. C., 108; *Singletary v. Whitaker, ibid.,* 77; *Ex parte Cotten, supra; Council v. Rivers,* 65 N. C., 54, and he then says: "These cases assert the power of the court of equity, upon petition for the sale of land for the benefit of infants, to compel the purchaser by orders made in the cause to perform specifically his contract of purchase." He further says: "The orderly mode of proceeding was for the court to accept the bid of Coffield and Barnhill, by confirming the contract of sale, and then, upon the matter set out in the report, to enter a rule against them to show cause why they should not be required to comply with the terms of sale." The court then proceeds to suggest, with reference to the correct procedure, that the purchasers may be decreed, (1) to specifically perform their contract; or (2) the land may be ordered to be sold and the purchaser released; or (3) without releasing the purchaser, such second sale may be directed, the purchasers undertaking, as a condition precedent to such order, to pay the additional costs and make good any deficiency produced thereby, citing *Council v. Rivers,* 65 N. C., 54. The Court, in *Hudson v. Coble, supra,* closes with this language: "The form of the present proceedings is essentially equitable, and must involve, when necessary to accomplish its purpose, the exercise of similar powers. It could never have been intended by the Legislature to confer the jurisdiction and leave the court without the means of making it effectual and complete. The application is in the Superior Court, the clerk exercises jurisdiction, and any question of law or fact may be referred to the judge or jury. There is no impediment suggested in the way of the exercise of all the functions pertinent to the case, and to a full and final determination." 24 Cyc., 52 and 53.

But counsel for respondents, while conceding this to be the general rule here and elsewhere, contend that there was a final judgment in this case; and, therefore, the remedy ordinarily available by motion in the pending cause is not open to petitioners. The answer to the position

is that even though the judgment was final, the allegations here are that the court was imposed upon, and important knowledge of the facts, as to the amount of the bid at the sale and as to certain transactions relating to it, were withheld from the court, and that it was deceived thereby, and induced to enter a judgment which it would not have rendered if it had possessed proper and requisite information of the facts and circumstances of the sale, which was wrongfully suppressed. Whether this is so or not must be ascertained by the court when an answer is filed, raising material issues. But until this is done, we must assume the facts to be as alleged in the .petition, there being no answer, but merely a motion to dismiss the proceeding, which requires us to consider the facts, as alleged, to be established, at least for the present, and for the purpose of deciding upon the motion. This being so, the case is brought directly within the principles stated in *Roberts v. Pratt,* 152 N. C., 731; *Massie v. Hanie,* 165 N. C., 174, and *Moody v. Wike,* 170 N. C., 731. It was held in *Roberts v. Pratt, supra:* "While it is very generally recognized that a final judgment can only be impeached for fraud by means of an independent action, this position does not necessarily prevail when a judgment has been procured by imposition on the court as to the rendition, or where it has been entered contrary to the course and practice of the court. In such case, relief may ordinarily be obtained by motion in the cause, and this procedure, as a rule, is proper and allowable in all cases where courts of the common law would correct their judgments by writs of error *coram nobis* or *coram vobis;* and this is especially true under our present system, combining legal and equitable procedure in one and the same jurisdiction." The question is fully discussed by *Justice Hoke* in the *Roberts case, supra,* and in *Massie v. Hanie, supra,* and further consideration of it we deem to be unnecessary.

If the facts are, as set out in the petition, and upon the motion to dismiss, in the nature of a demurrer, we must so hold, the petitioners have proceeded properly, and are entitled to be heard, and to have the court ascertain the facts by some appropriate procedure, and pass upon the rights of the parties.

We can never lend our approval to a practice by which parties stipulate as to the distribution of the proceeds of a judicial sale, affecting their own interests and for their own benefit, without the full knowledge and consent of the court. The facts must be disclosed in the report and submitted to the court, for its approval in proper cases. There are infants in this case whose rights may be seriously affected and prejudiced by such an agreement, and their interests must be protected. What was done in this particular matter may have been caused by ignorance of the law and of correct legal procedure, but the fact still remains that according to the allegations of the petitioners, the court was deprived of that

knowledge of the transaction to which it was entitled, and that it acted, and passed the decree, because of it, or, at least, without being aware of the agreement between the parties, or of any of its terms.

It may be that the facts will appear to be quite different from those alleged by petitioners, but however this may be, they are entitled to relief, and to substantial relief if they are successful in establishing their case.

The judgment will be set aside and further proceedings had in the court below, as indicated.

Reversed.