SUSAN DANTZIC, Petitioner v. STATE OF NORTH CAROLINA, Respondent

No. 7029SC550

(Filed 3 February 1971)

1. **Criminal Law § 180— writ of coram nobis — appropriate jurisdiction of the appellate division**

   The Court of Appeals is without authority to entertain an application for writ of *coram nobis;* application for the writ must be made to the Supreme Court.

2. **Criminal Law § 181— post conviction hearing — scope of review — petitioner under suspension of sentence**

   The Post Conviction Act is not available to a petitioner whose sentence was suspended and who is not a person imprisoned; petitioner's remedy is to apply for the writ of *coram nobis.* G.S. 15-217.

APPEAL by petitioner from *Snepp, Superior Court Judge,* 9 March 1970 Mixed Session, RUTHERFORD Superior Court.

On 16 August 1969 petitioner represented by privately employed counsel, entered a plea of guilty to a charge contained in a bill of indictment of exhibiting obscene and lewd movies depicting sexual intercourse. Judgment was entered imposing a six months prison sentence, suspended upon certain conditions. Petitioner did not appeal. On 13 October 1969 she applied to this Court for leave to apply to the Superior Court of Rutherford County for a writ of error *coram nobis.* On 30 October 1969 this Court granted petitioner permission to apply for the writ to the Superior Court of Rutherford County. Hearing on the application was held on 19 March 1970. From a judgment denying the relief sought, petitioner appealed.

*Attorney General Robert Morgan by Staff Attorney Rafford E. Jones for the State.*

*Smith and Patterson by Norman B. Smith for petitioner appellant.*

VAUGHN, Judge.

[1] Although not raised by either party on this appeal, the opinion of the Supreme Court in *State v. Green,* 277 N.C. 188, 176 S.E. 2d 756, filed subsequent to the order by which this Court, in its discretion, granted petitioner leave to apply to the

superior court for a writ of error *coram nobis,* raises a question as to whether the order was properly entered.

[2] The basic applications of the writ of error *coram nobis* have not essentially changed, though they have been expanded, from its common law genesis in civil cases during the sixteenth century through current criminal practice. Its framework has been adopted by statutes in a number of jurisdictions, including North Carolina, as a means of giving the trial court an opportunity to re-examine judgments of conviction for alleged errors outside of the record and for determining unadjudicated allegations of deprivation of constitutional rights. It has been said that the North Carolina Post Conviction Act (G.S. 15-217 through 15-222) was passed to replace the writ of error *coram nobis* insofar as the constitutionality of criminal trials is concerned *(State v. Merritt,* 264 N.C. 716, 142 S.E. 2d 687), and that, as now written, it "incorporates *habeas corpus, coram nobis* and any other common law or statutory remedy under which a person may collaterally attack his sentence." *State v. White,* 274 N.C. 220, 162 S.E. 2d 473. Judgments under this Act may be reviewed by the Court of Appeals, G.S. 15-222, and its decisions rendered thereon are not subject to further review in the courts of this State. G.S. 7A-28. The opinion in *State v. Rhinehart,* 267 N.C. 470, 148 S.E. 2d 651, intimates that a convicted defendant, having been subjected to a restraint upon his liberty not shared by the public generally (though not physically restrained) might avail himself of the same procedures for review as one who is actually confined, but the case does not expressly so hold. It appears therefore that the Post Conviction Act is not available to the present petitioner whose sentence was suspended and who is not a "person imprisoned in the penitentiary, Central Prison, common jail of any county . . . assigned to work under the supervision of the State Department of Correction." G.S. 15-217. Thus the defendant properly selected the relatively quiescent remedy of *coram nobis* as a means of seeking redress.

[1] For present purposes the facts in *State v. Green, supra,* may be stated as follows. Defendant was convicted in recorder's court and given a suspended sentence. Thereafter, upon a finding that defendant had violated the conditions of his suspended sentence, the sentence was ordered into effect and defendant appealed to the superior court. While the case was pending trial in the superior court, defendant applied to that court for the

issuance of a writ of error *coram nobis,* contending among other things, that he was deprived of his right to counsel in the recorder's court in violation of the rights secured to him by the Sixth and Fourteenth Amendments of the United States Constitution. From the denial of this application, defendant appealed to the Court of Appeals where the judgment of the trial court was affirmed on the grounds that, since the offense of which the defendant was convicted was a "petty" offense, defendant was not entitled to counsel as a matter of right. *State v. Green,* 8 N.C. App. 234, 174 S.E. 2d 8. On appeal to the Supreme Court, the Court held that defendant's application for the writ of error *coram nobis* should have been denied for the following reasons: (1) The "unauthorized application" was made to the wrong court. It should have been made to the recorder's court where the case was tried rather than to the superior court to which the judgment ordering the suspended sentence into effect had been appealed and was awaiting trial; and (2) application must first be made to and granted by the Supreme Court of North Carolina for permission to apply to the trial court for the writ of error *coram nobis.* The opinion contains the following:

" . . . [A]uthority for the writ stems from Article IV, Section 8 (now Section 10) of the Constitution of North Carolina which gives the Supreme Court authority to exercise supervision over the inferior courts of the State. *State v. Daniels,* 231 N.C. 17, 56 S.E. 2d 2 (1949).

"Since authority for issuance of the writ derives from the supervisory power of the Supreme Court conferred by the Constitution, 'it is necessary that an application be made to this Court for permission to apply for the writ to the Superior Court in which the case was tried. . . . ' "

The requirement that, in every instance, the approval of the Supreme Court must first be obtained before application can be made to the trial court for issuance of the writ of error *coram nobis* appears to be novel to North Carolina and here, of recent vintage. Prior to *In re Taylor,* 229 N.C. 297, 49 S.E. 2d 749, it does not appear that authority for the issuance of the writ, long recognized as an available common law writ, was derived from the supervisory powers granted in the Constitution but rather from G.S. 4-1 which, with certain exceptions,

adopted the common law as the law of this State. In *In re Taylor, supra,* defendant petitioned the Supreme Court to review a judgment of the superior court in a *habeas corpus* proceeding. Counsel appointed by the Supreme Court filed a report with the Court in which he reported that having come "to the conclusion that it was debatable whether the legality of the petitioner's trial based upon the suggestion of deprivation of statutory and constitutional rights could be decided on the merits in a proceeding in *Habeas Corpus,*" he had advised the defendant to petition the Court for permission to file petitions for writs of error *coram nobis* in Pitt County Superior Court but that petitioner had declined to follow his advice. In support of his contention that the Supreme Court *could* grant such a petition for leave to apply to the superior court, counsel cited several cases, which although related to the supervisory powers of the Court, did not deal with the issuance of the writ of *coram nobis.* The Court held that the writ of *habeas corpus* was inappropriate and denied defendant's petition to review the same. In *In re Taylor,* 230 N.C. 566, 53 S.E. 2d 857, the same prisoner apparently decided to follow the advice given him by counsel in the earlier case and did apply to the Supreme Court for leave to apply to the superior court for writs of error *coram nobis.* Although not holding that application must first be made to the Supreme Court in every case, the Court recited that "[t]he instant application for permission to apply to the trial court is addressed to the supervisory authority of this Court over 'proceedings of the inferior courts' of the State" and, in part, granted the application. A similar situation existed in *State v. Daniels,* 231 N.C. 17, 56 S.E. 2d 2. In that case defendants had been convicted of murder and their attorneys were late in serving the case on appeal. Defendants applied to the Supreme Court for *certiorari* to bring up the case on appeal, which the Court denied. The Court then observed that the gravamen of the challenge to the trial consisted of matters extraneous to the record and suggested that resort could be had to the writ of error *coram nobis.* The Court then stated that, upon a *prima facie* showing of substantiality, the Court would, in the exercise of its supervisory power, grant permission to apply for the writ to the court in which the case was tried. Defendant did apply but permission was denied for want of merit in *State v. Daniels,* 231 N.C. 341, 56 S.E. 2d 646. Subsequently in *State v. Daniels,* 231 N.C. 509, 57 S.E. 2d 653, the Court ordered the record

Dantzic v. State

proper to be filed in the case and records to be docketed. The judgment of the trial court was then affirmed and the appeal was dismissed. It may be observed that in the *Taylor* and *Daniels* cases the applications for permission to petition the trial court for the writ were made at the suggestion of the Supreme Court while some phase of the case was pending in and being considered by that Court. Thus the applications were, in those cases, considered by the Supreme Court in exercise of the general supervisory power granted to it by the Constitution of North Carolina. The statement in the *Taylor* and *Daniels* cases are consistent with, though perhaps expansive of, the doctrine set out in *Latham v. Hodges,* 35 N.C. 267, where the Court held that a writ of error *coram nobis* will not lie in the superior court *after* an appeal to the Supreme Court and an affirmation of the judgment in that Court. Although authority on the precise point is divided, cases in some other jurisdictions have held that after affirmance of a judgment on appeal, permission to apply in the trial court for the writ must first be obtained in the appellate court. See 145 A.L.R. 181; 18 Am. Jur. 2d, *Coram Nobis,* Etc., § 10. It is to be noted that a similar restriction does not apply when a defendant is proceeding under our post conviction statute. Prior to *Green* it does not appear that permission of the Supreme Court was generally required before applying to the trial court for the writ in cases where there had been no appeal and when no aspect of the case was under consideration by the Supreme Court. A review of earlier North Carolina cases discloses several instances where petitions for the writ were made directly to the trial court without application for permission to do so having first been made to the Supreme Court. In *Tyler v. Morris,* 20 N.C. 625, defendant made a motion in the superior court for a writ of error *coram nobis* to reverse a judgment alleging that the plaintiff was dead at the time judgment was rendered. From the refusal of the trial judge to issue the writ, the defendant appealed to the Supreme Court which held that, although on the facts shown the writ could have been issued, it was within the discretion of the trial judge and not subject to review by the Supreme Court. See also *Williams v. Edwards,* 34 N.C. 118. In *Roughton v. Brown,* 53 N.C. 393, judgment had been rendered against defendants in the County Court of Yadkin. Defendant petitioned that court for the issuance of the writ on the grounds that at the time of the rendition of judgment she was a *femme covert.* The county

court granted the petition and ordered the writ to issue. Plaintiff appealed to the superior court where the judgment was reversed. On appeal to the Supreme Court, in answer to plaintiff's contention that application for the writ should have been made in the superior court instead of the county court, the Supreme Court stated the following:

> "The distinction between an ordinary writ of error and a writ of error *coram nobis* is that the former is brought for a supposed error in law apparent upon the record, and takes the case to a higher tribunal, where the question is to be decided and the judgment, sentence, or decree is to be affirmed or reversed; while the latter is brought for an alleged error of fact, not appearing upon the record, and lies to the same court, in order that it may correct the error, which it is presumed would not have been committed had the fact in the first instance been brought to its notice. A writ of error of this kind will lie to any court of record, and as our county courts are courts of record we cannot conceive of a reason why one of them may not correct an error of fact in its judgment, upon a writ of error brought before itself. See 2 Tidd Practice, 1136, and *Lassiter v. Harper*, 32 N.C., 392."

The decision of the superior court was reversed and, again, there was no suggestion that approval of the Supreme Court was required before applying for the writ in the trial court. Notwithstanding these cases, however, it appears to be established that such permission is now required.

Though filed before the decision in *Green*, the petitioner in the case before us did, in fact, apply to this Court for permission to seek the writ of error *coram nobis* in the trial court. The Court of Appeals, acting in what was then thought to be a discretionary exercise of its supervisory power, granted permission. Petitioner, with some persuasiveness, could contend that the statutes creating the Court of Appeals and defining its jurisdiction, along with the supervisory powers granted to the Court of Appeals by 7A-32(c), pursuant to Article IV, Section 10(2) of the Constitution of North Carolina, authorized such action. These enactments, however, antedate the decision of our Supreme Court in *Green* and that case states unequivocally that it is necessary that application be made to the Supreme Court of North Carolina for permission to apply to the trial court for

the writ of error *coram nobis*. Accordingly, since this Court was without authority to entertain the application, all proceedings in the cause subsequent to our order of 30 October 1969, which we now hold to have been improperly entered, are a nullity.

In view of the foregoing we will refrain from discussing other questions raised by the parties and this Court. We did, however, carefully consider the merits of petitioner's appeal from the judgment of the trial court entered after the hearing on the writ of error *coram nobis* and are constrained to say we would affirm that judgment. Post conviction proceedings, whether instituted under the authority of the statute or the common law, cannot be used as a substitute for, or as an alternative to, direct appeal. The court made findings of fact as to all matters which were properly before the court in the instant application for *coram nobis*. The facts so found, being supported by competent evidence, support the judgment and are conclusive. Insofar as this Court is concerned therefore, the procedural difficulties encountered by the petitioner have not, as a practical matter, changed the result.

Appeal dismissed.

Judges CAMPBELL and BRITT concur.