SUSAN DANTZIC, Petitioner v. STATE OF NORTH CAROLINA, Respondent

No. 113

(Filed 30 July 1971)

1. **Criminal Law § 180— application for writ of coram nobis — jurisdiction of superior court**

   A petitioner who did not appeal from the final judgment of the superior court in a criminal case must apply directly to that court, rather than to the Supreme Court or the Court of Appeals, for permission to file a writ of *coram nobis* to attack the judgment.

2. **Criminal Law § 177— decision of Supreme Court — remand to Court of Appeals — coram nobis proceeding**

   The Supreme Court, upon its decision that petitioner properly filed its application for writ of *coram nobis* in the superior court rather than in the Supreme Court or Court of Appeals, remands the case to the Court of Appeals for consideration of petitioner's appeal from the *coram nobis* proceeding in the superior court.

ON *certiorari* granted on motion of petitioner for review of the decision of the Court of Appeals reported in 10 N.C. App. 369, 178 S.E. 2d 790 (1971), or, in the alternative, for leave to file in the Superior Court of Rutherford County a petition for writ of error *coram nobis* to enable petitioner to attack the judgment pronounced against her in that court at its August 1969 Session.

Petitioner did not appeal from the judgment pronounced against her at the August 1969 Session.

This collateral attack proceeding was initiated October 13, 1969, when petitioner filed in the North Carolina Court of Appeals a petition "for leave to apply to Superior Court of Rutherford County for a writ of error *coram nobis*." In her petition, she asserted she had been brought to trial in the Superior Court of Rutherford County on a bill of indictment which charged that she, on the 19th day of June, 1969, in Rutherford County, "did unlawfully and wilfully for the purpose of gain, exhibit obscene and immoral motion pictures, to wit: 'The Ramrodder' and 'A Piece of Her Action,' to an audience in Rutherford County on the premises of Mid-Way Drive In Theatre, Inc. Said Motion picture depicting in its most lewd, lascivious and degrading form the act of sexual intercourse . . . . " She also asserted the court, after reciting she had pleaded guilty as

Dantzic v. State

charged, pronounced judgment that she "be confined in the Women's Division of the State's Prison and there to be assigned to work under the supervision of the State Department of Correction as provided by law for a period of six months"; but provided that "(t)he foregoing prison sentence" was suspended for three years upon the following express terms and conditions:

"1. That the defendant pay into the office of the clerk of Superior Court of Rutherford County the sum of $1,000.00;

"2. That she at no time show any questionable picture until it has been reviewed by an agent appointed by the sheriff of Rutherford County and one appointed by her or her superiors, and if they are unable to agree as to the legality of the film, that they should select a third party to review the picture with them;

"3. That she not violate any of the criminal laws of this State for a period of three years."

Petitioner asserted her plea and sentence were void and should be set aside because: (1) Her plea of guilty was involuntary; (2) the condition of suspension of judgment set forth in the paragraph identified by the number "2" is unconstitutional and therefore a nullity; and (3) that, on grounds specified, the statute upon which her indictment was based, namely, G.S. 14-189.1, is unconstitutional on its face.

Throughout this collateral attack proceeding petitioner has been represented by counsel other than those who appeared for her at August 1969 Session of Rutherford Superior Court.

A pleading entitled "ANSWER AND MOTION TO DISMISS" was filed by the Attorney General.

Upon consideration, the Court of Appeals, on October 30, 1969, entered the following order: "It is ordered that permission be granted for leave to apply to the Superior Court of Rutherford County for a writ of error *coram nobis*. If the application be denied, findings of fact should be made as a basis therefor and petitioner will be allowed to appeal as in other proceedings. If the application is granted, the judgment will be vacated and the plea stricken out or permitted to be withdrawn and the case will be restored to the docket for trial . . . . "

Thereafter, petitioner filed in the Superior Court of Rutherford County an application dated November 10, 1969, for a writ of error *coram nobis,* in which, for the reasons previously asserted in her petition filed in the Court of Appeals, she prayed that she be granted a new trial.

At the March 9, 1970 Mixed Session of Rutherford Superior Court, The Honorable Frank W. Snepp, the judge presiding, conducted a plenary hearing on plaintiff's application. Judge Snepp heard the testimony of the following witnesses: Mrs. Susan Dantzic, petitioner; Dr. Fate J. Buchanan, chiropractor; Ervin Dantzic, petitioner's husband; George Morrow and John Mahoney, both lawyers for petitioner at August 1969 Session. After setting forth findings of fact in detail, Judge Snepp denied "petitioner's application for a new trial and other relief." In brief summary, Judge Snepp found that petitioner had been represented by able and experienced counsel; that her plea of guilty was voluntarily entered after she had been fully advised of her rights and of the consequences of her plea both by her counsel and by the court; and that petitioner's other grounds for attack on the judgment could have been but were not raised by petitioner on a direct appeal from the judgment entered at August 1969 Session.

Upon petitioner's appeal from Judge Snepp's judgment, the Court of Appeals, solely on the basis of the decision of this Court in *State v. Green,* 277 N.C. 188, 176 S.E. 2d 756 (1970), held it had no authority to entertain the petition for writ of error *coram nobis* filed with it on October 13, 1969, and that "all proceedings in the cause subsequent to our order of 30 October 1969, which we now hold to have been improperly entered, are a nullity."

*Smith & Patterson, by Norman B. Smith, for petitioner appellant.*

*Attorney General Morgan, Assistant Attorney General Icenhour and Staff Attorney Jones for the State.*

BOBBITT, Chief Justice.

We granted *certiorari* "for the sole purpose of determining whether or not the Court of Appeals has authority to issue writ of error *coram nobis.*"

In *State v. Green*, discussed below, this specific question was not presented to or considered by the Court of Appeals or by this Court. A brief resume of the factual situation and of the decisions in *Green* is appropriate.

In *State v. Green*, 8 N.C. App. 234, 174 S.E. 2d 8 (1970), the appeal to the Court of Appeals was from Judge Godwin's denial of the petition for a writ of error *coram nobis* filed by Green in the Superior Court of Rockingham County. Judge Godwin held the facts were insufficient to entitle Green to such writ. The Court of Appeals affirmed. Decision turned upon whether an indigent defendant, charged with wilful failure to support his illegitimate children, was entitled to representation by court-appointed counsel. Whether the superior court had authority to issue the writ in a different factual situation was not discussed. Nor was there any discussion as to whether it was necessary to obtain leave from the Court of Appeals or from the Supreme Court as a prerequisite for an application for such writ.

Upon Green's appeal to this Court under G.S. 7A-30, the decision of this Court, *State v. Green*, 277 N.C. 188, 176 S.E. 2d 756 (1970), is stated in the following two paragraphs of the majority opinion, *viz.*:

"We hold that defendant was charged with a petty offense and his trial without counsel did not violate his constitutional right to counsel under the Sixth and Fourteenth Amendments.

"Defendant's appeal, treated as a petition to this Court for leave to file a petition in the Recorder's Court of Reidsville for a writ of error *coram nobis*, is denied. The decision of the Court of Appeals affirming the denial order of Godwin, J., is AFFIRMED."

Our decision in *Green* was based on these propositions: (1) To obtain relief by writ of error *coram nobis*, Green was required to file his petition for such writ in the court in which the judgment had been rendered, namely, the Reidsville Recorder's Court; (2) Green was not entitled to file such petition as of right but only in the event the Supreme Court of North Carolina granted his application for permission to do so; and (3) Green could not avail himself of the procedures of our Post-Conviction Hearing Act, G.S. 15-217 *et seq.*, because he was not an "imprisoned" person.

Dantzic v. State

We deem it appropriate to reconsider the decisions of this Court on which the second proposition in *Green* was based.

"A writ of error *coram nobis* is a common-law writ of ancient origin devised by the judiciary . . . . " 24 C.J.S. *Criminal Law* § 1606(1), at 662 (1961). "It lies to vacate or correct a judgment, civil or criminal, for errors of fact as distinguished from errors of law. Application for the writ is made to the court which rendered the judgment." Annot., 145 A.L.R. 818 (1943). Accord, 18 Am. Jur. 2d *Coram Nobis, etc.,* § 3 (1965) ; 24 C.J.S. *Criminal Law* § 1606(2) (1961). As indicated below, the writ was first recognized and applied in this jurisdiction in civil cases.

In *Roughton v. Brown,* 53 N.C. 393 (1861), Justice Battle stated: "The distinction between an ordinary writ of error and a writ of error *coram nobis* is that the former is brought for a supposed error in law apparent upon the record, and takes the case to a higher tribunal, where the question is to be decided and the judgment, sentence, or decree is to be affirmed or reversed; while the latter is brought for an alleged error of fact, not appearing upon the record, and lies to the same court, in order that it may correct the error, which it is presumed would not have been committed had the fact in the first instance been brought to its notice." Accord, 18 Am. Jur. 2d *Coram Nobis, etc.,* § 2 at 452 (1965) ; *Tyler v. Morris,* 20 N.C. 625 (1839) ; *Williams v. Edwards,* 34 N.C. 118 (1851).

As succinctly stated in the first headnote in *Roughton v. Brown, supra:* "A writ of error *coram nobis* lies from any court of record returnable to itself, and not from a superior to an inferior court."

In 5 Encyclopaedia of Pleading and Practice 27-28 (1896), it is stated that "(t)he office of the writ of *coram nobis* is to bring the attention of the court to, and obtain relief from, errors of fact," such as (1) the death of a party pending the suit and before judgment as in *Tyler v. Morris, supra;* (2) the infancy of a party who was not properly represented by guardian as in *Williams v. Edwards, supra;* or (3) coverture, where the common law disability still existed, as in *Lassiter v. Harper,* 32 N.C. 392 (1849), and in *Roughton v. Brown, supra.*

In civil cases, the writ of error became obsolete upon adoption in North Carolina of the Code of Civil Procedure. The

remedy previously available by writ of error *coram nobis* was superseded by the statutory remedy of motion in the cause. *Lynn v. Lowe,* 88 N.C. 478 (1883); *Roberts v. Pratt,* 152 N.C. 731, 68 S.E. 240 (1910); *Massie v. Hainey,* 165 N.C. 174, 177-178, 81 S.E. 135, 136-137 (1914).

Prior to the *Taylor* and *Daniels* cases, discussed below, we find no *criminal* case in which this Court considered the writ of error *coram nobis*. The cited decisions in civil actions contain no suggestion that permission from the Supreme Court was required before a motion for writ of error *coram nobis* could be filed in the court in which the judgment under attack was rendered.

The second proposition in our decision in *State v. Green, supra,* is based upon the decisions in the *Taylor* and *Daniels* cases. *In re Taylor* (I), 229 N.C. 297, 49 S.E. 2d 749 (1948); *In re Taylor* (II), 230 N.C. 566, 53 S.E. 2d 857 (1949); *State v. Daniels* (I), 231 N.C. 17, 56 S.E. 2d 2 (1949); *State v. Daniels* (II), 231 N.C. 341, 56 S.E. 2d 646 (1949); *State v. Daniels* (III), 231 N.C. 509, 57 S.E. 2d 653 (1950). It is noted here that the *Taylor* and *Daniels* cases were decided prior to our original Post-Conviction Procedure Act. Session Laws of 1951, Chapter 1083.

At January 1947 Term of Pitt Superior Court, Laurie D. Taylor, a minor, was indicted in each of seven cases. Three indictments charged the capital felony of burglary in the first degree; four charged the felony of larceny. Taylor pleaded guilty of burglary in the second degree in the burglary cases and judgments of life imprisonment were pronounced. He pleaded guilty in each of the larceny cases and judgments imposing prison sentences were pronounced.

On July 8, 1948, Taylor applied for and obtained a writ of *habeas corpus*. In his application, he asserted that, although he was unable to employ counsel and was denied the benefit of counsel, he was required to plead to the seven indictments at January 1947 Term. At a hearing conducted July 19, 1948, on return of the writ of *habeas corpus*, Taylor's application for discharge was denied.

By letter dated September 7, 1948, Taylor requested a review by this Court of the judgment entered July 19, 1948, in the *habeas corpus* proceeding. The Court treated the letter as

a petition for *certiorari*. Pending decision thereon, J. C. B. Ehringhaus, Jr., Esq., a member of the Raleigh Bar, was appointed to investigate the case and report his findings to Taylor and to the Court. In his report, Mr. Ehringhaus reviewed the allegations in Taylor's petition in the *habeas corpus* proceeding, discussed various procedural questions and suggested *inter alia* that Taylor's remedy might be by petition to the Supreme Court for permission to file a petition for writ of error *coram nobis* in the Superior Court of Pitt County. The report included the following: "If upon petitioner's verification and the record in the *Habeas Corpus* proceeding, a *prima facie* showing of substantiality is made, the Court, in the exercise of its supervisory powers over inferior courts, could grant the petition and permit petitioner to proceed as above in Pitt Superior Court."

This Court denied *certiorari*. *In re Taylor* (I), *supra*. The opinion of Chief Justice Stacy contained the following: "Where the defendant in a criminal prosecution, less than capital, is unable to employ counsel, the appointment of counsel for him is discretionary with the trial court. *S. v. Hedgebeth,* 228 N.C. 259, 45 S.E. (2d) 563. It is otherwise, however, in capital cases. G.S. 15-4; *S. v. Farrell,* 223 N.C. 321, 26 S.E. (2d) 322. 'In a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeblemindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law.' *Powell v. Alabama,* 287 U.S. 45, 77 L. Ed. 158, 84 A.L.R. 527." In explanation of the denial of *certiorari,* the opinion states: "(W)hatever the merits of the matter, it could avail the petitioner naught to review the judgment of Judge Burney dismissing the writ of *habeas corpus.* Such writ is inappropriate under our procedure to obtain for the petitioner the relief which he seeks, and he has been so advised. *In re Steele,* 220 N.C. 685, 18 S.E. (2d) 132; *S. v. Dunn,* 159 N.C. 470, 74 S.E. 1014; *S. v. Burnette,* 173 N.C. 734, 91 S.E. 364. Not only is this so under the apposite decisions, but it is also provided by G. S. 17-4, that 'application to prosecute the writ shall be denied . . . (2) where persons are committed or detained by virtue of the final order, judgment or decree of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon such final order, judgment or decree.' *In re Schenck,* 74 N.C. 607." The Ehringhaus report is set out in full in the statement

of facts. The opinion itself contains no *express* reference to a writ of error *coram nobis*.

Thereafter, Taylor sought to test the legality of his imprisonment through *habeas corpus* proceedings in the United States District Court for the Eastern District of North Carolina. The federal court dismissed his petition on the ground he had not exhausted his State remedies. Thereafter, in Chief Justice Stacy's language: "Again of his own volition and *inops consilii*, he (Taylor) filed application here for leave to apply to the Superior Court of Pitt County for writs of error *coram nobis* to determine the lawfulness of his present incarceration." Taylor's unverified application was referred to Mr. Ehringhaus with a request that he advise Taylor as to further procedures. Taylor then verified the petition. It alleged in greater detail the facts concerning Taylor's age, his inexperience, his inability to employ counsel, etc., which he had set forth in earlier petitions. The Supreme Court granted Taylor's application in respect of the capital (burglary) charges but held no sufficient showing had been made to warrant the granting of the application "in respect of the non-capital indictments." *In re Taylor* (II), *supra.*

The opinion of Chief Justice Stacy in *In re Taylor* (II), *supra,* states: "The instant application for permission to apply to the trial court for relief is addressed to the supervisory authority of this Court over 'proceedings of the inferior courts' of the State. Const. Art. IV, Sec. 8; *S. v. Lawrence,* 81 N.C. 522; *S. v. Green,* 85 N.C. 600. See, also, note to *Halford v. Alexander,* 46 Am. Dec. 253-257."

The permission granted by the Supreme Court authorized the further proceedings set forth in the following excerpt from the opinion:

"The prison authorities will afford the petitioner an opportunity to appear at the next term of the Superior Court of Pitt County to be held for the trial of criminal cases, so that he may apply for writs of error *coram nobis* in respect of the three capital indictments as sought in his petition. Before entertaining his application, however, the trial court will see to it that the petitioner is represented by counsel, either of his own choosing and employment, or by appointment of the court. If under the advice of counsel, the petitioner elect to proceed further,

the court will entertain his application and make decision thereon. If the application be denied, findings of fact should be made as a basis therefor, the petitioner returned to the Central Prison, and allowed to appeal as in other proceedings.

"If the application be granted, the judgments should be vacated, the pleas stricken out or permitted to be withdrawn, and the cases restored to the docket for trial. In this latter event, the petitioner will be afforded an opportunity to confer with counsel, prepare his defense, and appear at his trial."

In *State v. Daniels* (I), *supra,* the defendants had been convicted of first degree murder and sentenced to death at May 1949 Term of Pitt Superior Court. Upon the solicitor's motion, the trial judge struck out the defendants' purported statement of case on appeal because of their failure to prepare and serve it within the time fixed by the court. Thereupon, the defendants filed petitions for *certiorari* to enable them to perfect their appeals. After stating the grounds for denial of *certiorari,* and after restating in substance what had been stated by Chief Justice Stacy in *In re Taylor* (II) concerning writs of error *coram nobis,* Justice Seawell pointed out that the writ of error *coram nobis* was available to petitioners but only "if they can bring themselvese within the purview of such a writ."

Thereafter the defendants filed a petition in the Supreme Court for permission to apply to the Superior Court of Pitt County for a writ of error *coram nobis.* The Supreme Court, referring to the Taylor cases and the prior Daniels case, denied the petition on the ground the defendants did not make the *prima facie* showing of substance necessary to bring themselves within the purview of the writ. *State v. Daniels* (II), *supra.*

In *State v. Daniels* (III), *supra,* after brief references to the prior *Daniels* decisions, judgments of the lower court were affirmed and the appeals therefrom were dismissed.

In accord with our cited civil cases, *Taylor* and *Daniels* held that an application for a writ of error *coram nobis* to attack collaterally a final judgment of a trial court must be made to and the hearing thereon conducted by the court which rendered the judgment. The innovation introduced by the Taylor and *Daniels* decisions was the requirement that permission from the Supreme Court must be obtained before application for

such writ could be made. Decisions cited as authority for this requirement in the Ehringhaus report in *In re Taylor* (I) and in the opinion of Chief Justice Stacy in *In re Taylor* (II) are cited in the following numbered paragraphs.

1. *Hysler v. State*, 146 Fla. 593, 1 So. 2d 628 (1941), where the Supreme Court of Florida denied the petitioner's application for a rehearing of an application for leave to apply to the Circuit Court of Duval County for a writ of error *coram nobis* to review his conviction for murder in the first degree. This decision was affirmed by the Supreme Court of the United States in *Hysler v. Florida*, 315 U.S. 411, 86 L. Ed. 932, 62 S.Ct. 688 (1941).

2. *Chambers v. State*, 117 Fla. 642, 158 So. 153 (1934), where the Supreme Court of Florida reversed with directions an order of the Circuit Court of Broward County which denied a petition for a writ of error *coram nobis*.

3. *Ex Parte Taylor*, 249 Ala. 667, 32 So. 2d 659 (1947), where the Supreme Court of Alabama denied the petitioner's application for leave to apply for a writ of error *coram nobis* in the Circuit Court of Mobile County to review his conviction for rape. This decision was affirmed by the Supreme Court of the United States, *sub nom. Taylor v. Alabama*, 335 U.S. 252, 92 L. Ed. 1935, 68 S.Ct. 1415 (1947).

Further investigation of the *Hysler* case discloses: Prior to the cited decisions, the defendant's conviction and sentence had been affirmed on direct appeal in *Hysler v. State*, 132 Fla. 209, 181 So. 354 (1938), and his application for a stay order and a writ of *habeas corpus* to withhold the execution of the death penalty had been denied in *Hysler v. State*, 136 Fla. 563, 187 So. 261 (1939).

Further investigation of the *Chambers* case discloses: Prior to the cited decision, the Supreme Court of Florida in *Chambers v. State*, 113 Fla. 786, 152 So. 437 (1934), had granted the petitioner's application for leave to file a petition for writ of error *coram nobis* in the Circuit Court of Broward County. In an earlier decision, *Chambers v. State*, 111 Fla. 707, 151 So. 499 (1933), the Supreme Court of Florida had affirmed on direct appeal the petitioner's conviction and sentence for first degree murder.

This excerpt from the opinion in *Chambers v. State,* 117 Fla. 642, 158 So. 153, *supra,* is noted: "The practice has prevailed in this state that *when a judgment* in a criminal case *has been affirmed* by the Supreme Court and the convicted persons desire to attack the judgment because of the existence of a fact which had the court known would have precluded the entry of the particular judgment, application must be made to the Supreme Court for leave to file a petition for the writ in the trial court because the judgment which has been affirmed by the Supreme Court becomes the judgment of that court and no other state court can examine its proceedings and annul its judgment, therefore it has been expressly held that the Supreme Court in such case has power to review its own judgment rendered on appeal through a writ of error *coram nobis.*" (Our italics.)

Further investigation of the Alabama case of *Ex Parte Taylor* discloses: Prior to the cited decisions, the Supreme Court of Alabama in *Taylor v. State,* 249 Ala. 130, 30 So. 2d 256 (1947), had affirmed the petitioner's conviction and sentence for rape. This excerpt from the opinion of the Supreme Court of the United States in *Taylor v. Alabama* is noted: "As distinguished from the traditional writ of error enabling a superior court to review an error of law committed by a trial court, the writ of error *coram nobis* brings the error of fact directly before the trial court. However, *when the judgment of the trial court* already *has been affirmed* by the judgment of a superior court, then the trial court is bound by the mandate of that superior court. Under those circumstances, it is appropriate to require a petitioner to secure, from that superior court, permission to file his petition for writ of error *coram nobis* in the trial court where he seeks an order setting aside the judgment already affirmed by the superior court. This additional step was included in the Florida procedure which was favorably considered by this Court in *Hysler v. Florida,* 315 U.S. 411, 86 L. Ed. 932, 62 S.Ct. 688, *supra.*" (Our italics.)

There is a sharp diversity of opinion as to whether permission to apply for a writ of error *coram nobis* must be obtained from an appellate court which on direct appeal has affirmed the judgment of the lower court. See Annot., "Writ of *coram nobis* after affirmance," 145 A.L.R. 818 *et seq.,* and supplemental decisions. Florida and Alabama have answered, "Yes."

Other jurisdictions have answered, "No." In changing its answer from "Yes" to "No," the Kentucky Court of Appeals said: "Later investigation of the question has convinced us that reason, logic and justice support the theory sustained by a majority of courts that the fact of the judgment of conviction having been affirmed by an appellate court creates no obstacle to the right of the convicted accused to obtain the writ if he alleges and proves facts sufficient therefor." *Smith v. Buchanan,* 291 Ky. 44, 163 S.W. 2d 5, 145 A.L.R. 813 (1942).

We have found no decision other than *Taylor* and *Daniels* which purport to hold that application for permission to an appellate court is a prerequisite for an application for a writ of error *coram nobis* to attack a final judgment of a lower court *from which no appeal was taken.*

Although not cited in *Taylor* and *Daniels,* we take notice of the decision of this Court in *Latham v. Hodges,* 35 N.C. 267 (1852). It was there held that the superior court could not reverse a judgment against the sureties on the caveator's cost bond, which judgment had been affirmed by the Supreme Court, upon the application of the sureties for a writ of error *coram nobis* on the ground the caveator was dead when the issue *devisavit vel non* was determined in favor of the propounders. The precise question the sureties sought to present by application for writ of error *coram nobis* had been raised, considered and decided adversely to them on direct appeal to the Supreme Court. *Woolard v. Woolard,* 30 N.C. 322 (1848). See the following references to *Latham v. Hodges, supra: Dantzic v. State,* 10 N.C. App. 369, 373, 178 S.E. 2d 790, 793 (1971); Comment: The Writs of Error *Coram Nobis* and *Coram Vobis,* 2 Duke Bar J. 29, 37 (1951); Annot., 145 A.L.R. at 820; Orfield, The Writ of Error *Coram Nobis* in Civil Practice, 20 Va. L. Rev. 423, 424 n. 8 (1934).

Decisions cited in *Taylor* and *Daniels* other than those referred to in the above numbered paragraphs relate to other aspects of the writ of error *coram nobis.*

Petitioner did not appeal from the judgment of the Superior Court of Rutherford County. We perceive no sound reason why she should be required to apply either to the Court of Appeals or to the Supreme Court of North Carolina for permission to file a petition for a writ of error *coram nobis* in the Superior

Court of Rutherford County to attack a final judgment of that court. The records were in Rutherford County. No records pertinent to the case were in either of the appellate courts. No appellate court had affirmed the judgment of the Superior Court of Rutherford County.

If petitioner were presently imprisoned, she could have proceeded under our Post-Conviction Hearing Act. G.S. 15-217 *et seq.* In express terms, this procedure is available when an imprisoned person seeks relief by petition for writ of error *coram nobis.* G.S. 15-217. There is no requirement that such imprisoned person obtain leave from an appellate court even though on direct appeal the appellate court has affirmed the judgment the petitioner seeks to attack. This is because the collateral attack is based on facts not disclosed by the record on appeal. *State v. White,* 274 N.C. 220, 162 S.E. 2d 473 (1968).

"The writ of error *coram nobis* can only be granted in the court where the judgment was rendered." *State v. Daniels* (I), *supra* at 25, 56 S.E. 2d at 7. In this and other respects, the procedure and function of the writ of error *coram nobis* are substantially the same as provided by petition under the Post-Conviction Hearing Act. *State v. Merritt,* 264 N.C. 716, 142 S.E. 2d 687 (1965). We perceive no justification for a rule that would require a person who is not in prison to obtain permission from an appellate court in order to file a petition for a writ of error *coram nobis* to attack collaterally a final judgment of a trial court from which no appeal was taken. Whether he can otherwise bring himself within the purview of the writ is another matter.

The Constitution of North Carolina, Article IV, § 12(1), provides that the Supreme Court "may issue any remedial writs necessary to give it general supervision and control over the proceedings of the other courts." Article IV, § 12(2), provides that "(t)he Court of Appeals shall have such appellate jurisdiction as the General Assembly may prescribe."

The provisions of G.S. 7A-32 relate to the jurisdiction of the Supreme Court and of the Court of Appeals *with reference to the issuance of remedial writs*. No question is presented as to distinctions between the jurisdiction of the Supreme Court and of the Court of Appeals with reference to the issuance of such writs. *Taylor* and *Daniels* are in accord with other decisions

---

**Dantzic v. State**

---

in North Carolina and elsewhere in holding that a writ of error *coram nobis* is issued only by the court which rendered the judgment. As indicated, the *Taylor* and *Daniels* decisions imposed a new requirement upon the ancient common-law writ of error *coram nobis,* namely, a requirement that permission be first obtained from the Supreme Court, such permission to be granted under the supervisory power presently conferred upon the Supreme Court by Article IV, § 12(1), of the Constitution of North Carolina. We have concluded that such requirement is neither necessary nor desirable under present conditions with reference to a final judgment of a trial court from which there was no appeal. In this respect, *Taylor, Daniels* and *Green* are overruled. It is unnecessary to decide on this appeal whether permission should be required with reference to a judgment affirmed on appeal by the Court of Appeals or by the Supreme Court or both.

[1, 2] The foregoing leads to this conclusion: It was unnecessary for petitioner to obtain leave from the Court of Appeals or from the Supreme Court before she applied to the Superior Court of Rutherford County. She applied to the Superior Court of Rutherford County as was her right and Judge Snepp conducted a plenary hearing upon her petition. His authority to do so was in no way impaired by the order of the Court of Appeals which had approved this course. Judge Snepp conducted the plenary hearing, found the facts and denied relief. Hence, in the light of the present decision, the case was and is for hearing on the exceptions brought forward by petitioner in her appeal to the Court of Appeals. Therefore, the cause is remanded to the Court of Appeals for its consideration of the exceptions presented by petitioner's appeal from Judge Snepp's order.

Error and remanded.