## IN THE MATTER OF JUDGE E. E. CRUTCHFIELD

### No. 97

### (Filed 17 December 1975 — Fall Term)

1. **Judges § 7— misconduct in office — proceeding before Judicial Standards Commission**

   A proceeding before the Judicial Standards Commission is neither criminal nor civil in nature but is an inquiry into the conduct of a judicial officer, the purpose of which is not primarily to punish any individual but to maintain due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges.

2. **Judges § 7; Judgments § 1— responsibility for judgment**

   A judge may not escape responsibility for any judgments signed by him by delegating their preparation to counsel or anyone else.

3. **Judges § 7— misconduct in office — absence of benefit to judge**

   The conduct of a judge is not precluded from being prejudicial to the administration of justice and that which brings the judicial office into disrepute by the fact that the judge received no personal benefit, financial or otherwise, from such conduct.

4. **Judges § 7— misconduct in office — motive — results of conduct**

   Whether the conduct of a judge may be characterized as prejudicial to the administration of justice which brings the judicial office into disrepute depends not so much upon the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers.

5. **Judges § 7— misconduct in office — limited driving privileges upon ex parte request — censure by Supreme Court**

   A district court judge, upon recommendation of the Judicial Standards Commission, is censured by the Supreme Court for "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" based upon the judge's action in signing judgments granting limited driving privileges to two defendants upon a mere *ex parte* application of counsel for defendants without making any effort or conducting any inquiry to ascertain whether the facts recited in the judgments were true and whether he was lawfully entitled to enter the judgments and without giving the State an opportunity to be heard, when in truth the judgments were supported neither in fact nor in law and were beyond the jurisdiction of the district court judge who signed them.

   Justice LAKE dissenting.

*Appearances:*

E. A. Hightower, C. Frank Griffin, Henry L. Kitchin, for Judge E. E. Crutchfield, Respondent.

Millard R. Rich, Jr., Deputy Attorney General, for Judicial Standards Commission.

## ORDER OF CENSURE

This matter is before the Court upon the Recommendation of the Judicial Standards Commission (Commission) filed with us on August 13, 1975, that Judge E. E. Crutchfield, a judge of the General Court of Justice, District Court Division, Twentieth Judicial District (Respondent), be censured for "conduct prejudicial to the administration of justice that brings the judicial office into disrepute," as this phrase is used in Article IV, Section 17(2) of the North Carolina Constitution and N. C. Gen. Stat. 7A-376 (1974 Cum. Supp.). Having considered the record in the matter consisting of the verified complaint and answer filed with, the evidence heard by, and the findings of fact, conclusions, and Recommendation made by the Commission, and the briefs for Respondent and Commission filed with us (Respondent having elected not to argue the matter orally) we note the following procedure before and Findings of the Commission and we make the following Conclusions of Law and Order of Censure:

## PROCEDURE BEFORE AND FINDINGS OF THE COMMISSION

1. This proceeding was instituted before the Commission on December 12, 1974, by the filing of a verified complaint which alleged in substance that Respondent had engaged in wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in that he had:

(a) on May 6, 1974, signed a "Judgment Allowing Limited Driving Privilege" to one William B. Byrd despite the facts that Byrd when arrested and charged with driving a vehicle while under the influence of intoxicating liquor on April 6, 1974, refused to take the breathalyzer test and had not, as of May 6, 1974, even been tried for the offense;

(b) on May 4, 1974, signed a "Judgment Allowing Limited Driving Privilege" to one Lybon H. Nance despite the facts that Nance when arrested and charged with driving a vehicle while under the influence of intoxicating liquor on April 20, 1974, refused to take the breathalyzer test and Respondent was not the judge who tried Nance for the offense; and

In re Crutchfield

(c) neither of the judgments was filed with the Clerk of Court nor forwarded to the North Carolina Department of Motor Vehicles.

2. Respondent filed a verified answer admitting these allegations.

3. Upon due notice, Respondent was accorded a full adversary hearing before the Commission on April 3, 1975, at which time he was represented by counsel. At the hearing Respondent stipulated that the Commission could consider as evidence:

(a) the Court records pertaining to the driving under the influence of intoxicating liquor charges against Byrd and Nance;

(b) statements obtained from Byrd, Nance and Mrs. Nance by an agent of the State Bureau of Investigation;

(c) a letter Respondent had previously written to the Commission dated July 19, 1974;

(d) Respondent's earlier oral statement given to an agent of the State Bureau of Investigation;

(e) the complaint and answer; and

(f) Respondent's own sworn testimony before the Commission.

During the hearing, Respondent also consented to the Commission's considering statements taken from attorneys Charles Brown and Fred Stokes, whose clients were the beneficiaries of the judgments in question, by an agent of the State Bureau of Investigation.

4. Upon considering this evidence the Commission found certain facts as follows:

"7. That on April 6, 1974, William Brooks Byrd, Route 1, Box 56, Norwood, North Carolina, was arrested in Stanly County by North Carolina State Highway Patrolman C. B. Blackmon, and charged with driving under the influence of intoxicating liquor and the possession of tax paid liquor with the seal broken in the passenger area of an automobile.

"8. That the said William B. Byrd, at the time of his arrest, refused to take a breathalyzer test.

"9. That on or about May 6, 1974, Respondent signed a 'Judgment Allowing Limited Driving Privilege' to said Byrd and in which Judgment it was recited that he had been convicted of driving a motor vehicle while under the influence of alcohol and which Judgment granted to him limited driving privileges as provided by G.S. 20-179.

"10. That on the date said Judgment was signed, to wit: May 6, 1974, the said Byrd had not been tried on said charges of driving under the influence of intoxicating liquor and possession of tax paid whiskey and that said case was not tried until May 18, 1974.

"11. That Respondent held no hearing with reference to the request of the said Byrd that he be allowed limited driving privileges, made no inquiry with reference to whether a trial of the said Byrd had been held and if so, by whom or as to whether or not the said Byrd had been convicted of driving under the influence of intoxicants.

"12. That said Judgment and copies were signed by Respondent in the law offices of the attorney representing the said Byrd, at said attorney's request; that no copy of said Judgment was filed with the Clerk of the Superior Court of Stanly County nor was any copy sent to the Department of Motor Vehicles in Raleigh, as required by the provisions of G.S. 20-179.

"13. That Respondent was aware at the time he signed said Judgment that only the Trial Judge was authorized by the provisions of G.S. 20-179 to allow limited driving privileges to the person convicted, and was likewise aware of the fact that the form of said Judgment set out in said statutes referred to a hearing and recited a conviction of such defendant in allowing said restricted driving privileges. That Respondent was likewise aware that the Department of Motor Vehicles was required to revoke the driving privilege of any person arrested for driving under the influence of intoxicants who refused to take a breathalyzer test and was aware that such a person was not entitled under the applicable statutes, to receive restricted driving privileges.

In re Crutchfield

"14. That on or about April 20, 1974, Lyvon Hampton Nance, 742 Best Street, Albemarle, North Carolina, was arrested in Stanly County by C. H. Sluder, a North Carolina State Highway Patrolman, and was charged with driving under the influence of intoxicants.

"15. That said Nance refused to take a breathalyzer test.

"16. That on or about May 6, 1974, the said Nance was found guilty of driving under the influence of intoxicants by District Court Judge A. A. Webb, who was the Trial Judge presiding over the trial of said case.

"17. That on or about May 6, 1974, Respondent signed a 'Judgment Allowing Limited Driving Privilege' in favor of the said Nance even though Respondent had not been the Trial Judge presiding over the trial of said Nance and even though Nance was not eligible to receive a limited driving privilege because of his refusal to take a breathalyzer test.

"18. That Respondent held no hearing with reference to the request of the said Nance that he be allowed limited driving privileges, made no inquiry with reference to whether a trial of the said Nance had been held, and if so, by whom.

"19. That Respondent signed said Judgment and copies thereof in the law offices of Nance's attorney and that copy of said Judgment was not filed in the Office of the Clerk of Superior Court of Stanly County, nor was a copy sent to the North Carolina Department of Motor Vehicles in Raleigh.

"20. That Respondent was aware at the time he signed said Judgment that only the Trial Judge was authorized by the provisions of G.S. 20-179 to allow limited driving privileges to the person convicted, and was likewise aware of the fact that the form of said Judgment set out in said statute referred to a hearing. That Respondent was likewise aware that the Depart-

ment of Motor Vehicles was required to revoke the driving privilege of any person arrested for driving under the influence of intoxicants and who refused to take a breathalyzer test and was aware that such a person was not entitled under the applicable statutes to receive restricted driving privileges.

5. In order to meet squarely Respondent's arguments urging us to reject the Commission's Recommendation we observe that the uncontradicted (except where noted) evidence before the Commission tends to show the following facts:

(a) Respondent signed each judgment in question at the request of a reputable, local attorney who had never in the past misled him (there is some evidence that Respondent signed the Byrd judgment at the request of Byrd himself but we will assume for purposes of this order, in accordance with Respondent's testimony before the Commission, the request for each judgment came from the defendant's attorney) ;

(b) the attorney in each case prepared each judgment for Respondent's signature but otherwise made no express representations of any fact material to the judgment upon which Respondent relied;

(c) Respondent did not personally benefit, financially or otherwise, by reason of his signing either judgment.

## CONCLUSIONS OF LAW AND ORDER OF CENSURE

1. The Commission's findings are supported by the evidence. They are indeed not contradicted by any evidence. We, consequently, affirm these findings.

[1] 2. This proceeding is neither criminal nor civil in nature. It is an inquiry into the conduct of a judicial officer, the purpose of which is not primarily to punish any individual but to maintain due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges. *In Re Diener,* 268 Md. 659, 304 A. 2d 587 (1973) cert. denied, 415 U.S. 989; *In Re Kelly,* 238 So. 2d 565 (Fla. 1970) cert. denied, 401 U.S. 962; *Memphis and Shelby County Bar Association v. Vick,* 40 Tenn. App. 206, 290 S.W. 2d 871 (1955) cert. denied, 352 U.S. 975.

[2]   3. A judgment is an act of the court, not counsel. Respondent may not escape responsibility for any judgments signed by him by delegating their preparation to counsel or anyone else. "The trial judge cannot be too careful to make certain that his judgments and orders are accurate and complete, regardless of who takes the primary responsibility of preparing them." The National Conference of State Trial Judges, The State Trial Judge's Book 197 (2d ed. 1969).

[3]   4. That Respondent received no personal benefit, financial or otherwise, from signing these judgments does not preclude this conduct from being prejudicial to the administration of justice and that which brings the judicial office into disrepute. Whether a judge receives any personal benefit from his conduct has been held to be "wholly irrelevant" to the inquiry. *In Re Diener, supra* at 670, 304 A. 2d at 594.

[4]   5. Whether the conduct of a judge may be characterized as prejudicial to the administration of justice which brings the judicial office into disrepute depends not so much upon the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers. *Geiler v. Commission on Judicial Qualifications,* 10 Cal. 3d 270, 515 P. 2d 1, 110 Cal. Rptr. 201 (1973) cert. denied 417 U.S. 932.

6. Respondent's conduct in signing these judgments in question without any semblance of an inquiry to determine either the factual or legal basis for them strikes at the very heart of the adjudicatory process. The gravamen of his offense is not so much that his judgments were contrary to law, beyond his jurisdiction to enter, or that some of the facts recited therein were indisputably false. The gravamen is that Respondent made no effort to ascertain whether his judgments were supported in law and in fact. "We have not the smallest doubt . . . that the disposition of cases for reasons other than an honest appraisal of the facts and the law, as disclosed by the evidence presented, will amount to conduct prejudicial to the proper administration of justice whenever and however it may be defined or whoever does the defining." *In Re Diener, supra* at 671, 304 A. 2d at 594.

7. The result of Respondent's conduct was a gross abuse by him of those provisions of our Motor Vehicle Statutes relat-

ing to driving privileges for persons charged and not tried and charged and convicted of driving while under the influence of intoxicants, particularly N. C. Gen. Stats. 20-16.2(c) and 20-179(b).

8. Respondent's judgments under these circumstances in the eyes of any knowledgeable observer were bound to prejudice the administration of justice and to bring the judicial office into disrepute.

9. The failure of Respondent to make due inquiry into the facts and law upon which these judgments were based and his execution of them upon a mere *ex parte* application of counsel for defendants also violates Canon 3(A)(4) of the North Carolina Code of Judicial Conduct, 283 N.C. 771, 772, which provides that "[a] judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." Codes of judicial conduct may "usefully be consulted to give meaning to the constitutional standards." *Spruance v. Commission on Judicial Qualifications,* 13 Cal. 3d 778, 796, 532 P. 2d 1209, 1221, 119 Cal. Rptr. 841, 853 (1975) ; *accord, Geiler v. Commission on Judicial Qualifications, supra.*

[5]  10. We conclude, finally, that Respondent's execution of each "Judgment Allowing Limited Driving Privilege" upon a mere *ex parte* request without making any effort or conducting any inquiry to ascertain whether the facts recited in the judgments were true and whether he was lawfully entitled to enter the judgments and without giving the State an opportunity to be heard when in truth the judgments were supported neither in fact nor in law and were beyond Respondent's jurisdiction to enter constituted a gross abuse by Respondent of important provisions of our Motor Vehicle Statutes and amounted to "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" as this phrase is used in Article IV, Section 17(2) of the North Carolina Constitution and N. C. Gen. Stat. 7A-376 (1974 Cum. Supp.), and for this conduct Respondent ought to be censured in accordance with the Recommendation of the Judicial Standards Commission.

Now, therefore, it is ORDERED that Judge E. E. Crutchfield, Respondent herein, be and he is hereby censured by this Court.

---

In re Crutchfield

---

Done by the Court in Conference, this 17 day of December, 1975.

Exum, J.
For the Court

Justice LAKE dissenting.

My dissent does not reflect any doubt on my part that certain acts of the respondent, purportedly in the performance of his judicial duties, as shown in the evidence in the record before us, were reprehensible, prejudicial to the administration of justice and of such nature as to bring the judicial office into disrepute and thus merit the censure of this Court and of all right minded citizens. The basis of my dissent is the much more fundamental principles of law, declared in the Due Process and Equal Protection Clauses of the Constitution of this State and of the United States.

Since this is the first proceeding to reach this Court under G.S. Ch. 7A, Art. 30, by which the Judicial Standards Commission was created and without which it has no authority, and since such a proceeding is of significant interest to the public, the bench and the bar, I believe the constitutional deficiencies of the statute should be dealt with by this Court even though not specifically raised by the respondent. The attention of the General Assembly being so directed to these deficiencies, it can, if it deems proper, enact at its forthcoming session a new and valid statute to carry out the mandate laid upon it by Art. IV, § 17, of the Constitution of North Carolina, ratified at the general election of 1972.

For the present I pass over the interesting question of whether the General Assembly may lawfully enact legislation creating and empowering such a Commission, at a time when the Constitution does not authorize it, by making the effectiveness of its enactment contingent upon the ratification of a then pending constitutional amendment. See, Session Laws of 1971, Ch. 590.

Article I, § 19, of the Constitution of North Carolina declares:

"No person shall be * * * disseized of his * * * privileges * * * or in any manner deprived of his life, liberty

or property, but by the law of the land. No person shall be denied the equal protection of the laws * * * ."

The Fourteenth Amendment to the Constitution of the United States declares:

" * * * nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is my view that the statute by which that Commission was created, and which is its sole source of power or authority, violates these basic principles. For that reason, this Court cannot, and does not, derive therefrom authority to enter the present order.

It will be observed that this Court does not purport to enter this order as an exercise of its general supervisory power over proceedings of the other courts of this State, including that over which Judge Crutchfield was elected by the people of his district to preside. See: Constitution of North Carolina, Art. IV, § 12(1); *Dantzic v. State,* 279 N.C. 212, 219, 182 S.E. 2d 563. Consequently, this dissenting opinion does not relate to an order of censure entered in the exercise of that power. Obviously, it does not relate to a judgment entered by the Senate, sitting as the Court for the Trial of Impeachments. See, Constitution of North Carolina, Art. IV, § 4.

In the present proceeding, no court has heard any evidence or made any finding of fact. This Court has simply reviewed the record transmitted to it by an administrative agency, has concluded the evidence in the record supports findings made by that agency and has acted in accordance with its recommendation. The jurisdiction of this Court over the subject matter of this proceeding is derivative and can rise no higher than its source—the proceeding before the Judicial Standards Commission. The jurisdiction of a court over the subject matter is always a proper inquiry for that court, whether raised by the litigants or not.

The Act of 1971 creating the Judicial Standards Commission purports to establish a procedure, other than impeachment, whereby a judge may be censured or removed from his office. The Act provides, G.S. 7A-376, that a judge "removed for other than mental or physical incapacity receives no retirement com-

pensation, and is disqualified from holding further judicial office." Thus, the Act purports to provide a means whereby a judge may be deprived of retirement benefits for which he has, while in office, made substantial payments to the State Retirement Fund, may be deprived of the office to which he has been elected by the people for a specified term of years, and may be denied the right, held by every other qualified voter of the State, to seek election to any judicial office so long as he lives.

The Constitution of North Carolina, Art. XI, § 1, declares:

> "*Punishments.* The following punishments only shall be known to the laws of this State: Death, imprisonment, fines, *removal from office,* and *disqualification to hold and enjoy any office of honor, trust, or profit under this State.*" (Emphasis added.)

While the majority opinion in this matter is technically correct in saying this is not a criminal proceeding, since it is a proceeding not brought or tried in any court of justice, it is neither technically nor substantially correct to say its purpose is not to punish the respondent for alleged wrongdoing. Removal from office and disqualification thereafter to hold office are expressly declared by the Constitution to be punishments. If it were not so, common sense would require the conclusion that to remove a judge from office, deny him the retirement compensation for which he has paid, and disqualify him for life to hold judicial office again is a far more serious punishment than a fine of fifty dollars for speeding or even imprisonment for thirty days.

In my view, a formal order of this Court, follows a publicized recommendation of an official State agency, censuring a judge for misconduct in office, is a severe punishment. To say it is not, because the purpose of the Court is to maintain the public's confidence in its judicial system, is equivalent, in law and in fact, to saying execution for crime is not punishment therefor because the purpose is to improve the environment. In any event, nothing in this record indicates that the Judicial Standards Commission ever notified this respondent that the purpose of its proceeding was to censure him rather than remove him from office. A recommendation by it for removal was a distinct possibility until its actual recommendation was made at the end of the proceeding.

Even a judge charged with misconduct in office is entitled to a fair trial before a fact finding body which has not already

determined his probable guilt to its own satisfaction. Even an accused judge is entitled to the basic constitutional protections afforded by Due Process and Equal Protection Clauses to one suspected of rape, murder, burglary, robbery or embezzlement.

As the Constitution of North Carolina, Art. I, § 35, states, "A frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty." Two of these are expressed in the Due Process and the Equal Protection Clauses. The 1972 Amendment to the Constitution, Art. IV, § 17, authorizing the General Assembly to enact legislation providing for removal and censure of judges obviously contemplated that it would do so within the limitation of those clauses.

G.S. 7A-376 provides:

> "*Upon recommendation of the Commission,* the Supreme Court may censure or remove any justice or judge for wilful misconduct in office, wilful and persistent failure to perform his duties, habitual intemperance, conviction of a crime involving moral turpitude, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute."

Under this statute, this Court may act only upon a recommendation of the Judicial Standards Commission, an administrative agency. This statute, and the remaining sections comprising the Judicial Standards Commission Act, G.S. Ch. 7A, Art. 30, establish no standard or guide-line whatsoever by which to determine whether the Commission shall recommend, or this Court shall impose, the punishment of censure or the infinitely more severe punishment of removal, loss of retirement benefits and disqualification to hold further judicial office. The Commission, in its unbridled discretion, for unstated reasons, political, personal or otherwise in nature, can choose between the two on a case by case basis, recommending the extreme penalty of removal of one judge and the much milder censure of another judge though their conduct be identical, or though the judge to be censured be found to have accepted bribes and the judge to be removed be found to have done nothing worse than sign without authority (as Judge Crutchfield is said to have done) orders granting permission to operate a motor vehicle. Such statutory invitation to gross favoritism by an administrative agency in the choice of punishment to be imposed for wrongdoing is not consistent with the Equal Protection Clause. Com-

pare, *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 2d 346. To hold such a statute invalid it is not required that actual abuse of such unlimited discretion be shown.

G.S. 7A-377 is the only statutory provision relating to the procedure before the Judicial Standards Commission. It provides:

> "(a) Any citizen of the State may file a written complaint with the Commission concerning the qualifications or conduct of any justice or judge of the General Court of Justice, and thereupon *the Commission shall make such investigation as it deems necessary. The Commission may also make an investigation on its own motion. The Commission is authorized to issue process* to compel the attendance of witnesses and the production of evidence, to administer oaths, to punish for contempt, *and to prescribe its own rules of procedure.* No justice or judge shall be recommended for censure or removal unless he has been given a hearing affording due process of law. *All papers filed with and proceedings before the Commission are confidential, unless the judge involved shall otherwise request.* The recommendation of the Commission to the Supreme Court, and the record filed in support of the recommendations are not confidential. Testimony and other evidence presented to the Commission is privileged in any action for defamation. No other publication of such testimony or evidence is privileged, except that the record filed with the Supreme Court continues to be privileged. At least five members of the Commission must concur in any recommendation to censure or remove any justice or judge. A respondent who is recommended for censure or removal is entitled to a copy of the proposed record to be filed with the Supreme Court, and if he has objections to it, to have the record settled by the Commission. He is also entitled to present a brief and to argue his case, in person and through counsel, to the Supreme Court. A majority of the members of the Supreme Court voting must concur in any order of censure or removal. The Supreme Court may approve the recommendation, remand for further proceedings, or reject the recommendation. A justice of the Supreme Court or a member of the Commission who is a judge is disqualified from acting in any case in which he is a respondent.

---

In re Crutchfield

---

"(b) The Commission is authorized to employ an executive secretary to assist it in carrying out its duties. *For specific cases, the Commission may also employ special counsel or call upon the Attorney General to furnish counsel. For specific cases, the Commission may also employ an investigator or call upon the Director of the State Bureau of Investigation to furnish an investigator.* While performing duties for the Commission such executive secretary, special counsel, or investigator shall have authority throughout the State to serve subpoenas or other process issued by the Commission in the same manner and with the same effect as an officer authorized to serve process of the General Court of Justice."

Obviously, this statute makes the Judicial Standards Commission the investigator, the accuser, the prosecutor, the jury to find the facts, and the determiner of the sentence to be recommended. If this be due process of law, it would be difficult to find a procedural violation of that basic constitutional right. Even one accused of the most vicious crime is not placed on trial before a petit jury drawn from the police department which investigated the report of the crime, the grand jury which indicted him and the staff of the prosecuting attorney.

Nothing in the statute provides for putting in evidence the initial complaint filed with the Commission, or even disclosing to the accused judge the name of his accuser or the complaint filed. On the contrary, the statute provides the complaint shall be confidential, unless the accused judge, prior to seeing it, requests otherwise; that is, requests that it be made public. Likewise, nothing in the statute requires or contemplates putting in evidence, at the hearing before the Commission, the reports it receives from its investigators, or the calling of such investigators for cross-examination. Yet, the Commission has received these reports, which, necessarily, are largely hearsay and conclusions of the investigator based upon unspecified data, and, on the basis of these, has made its initial determination of the probable guilt of the respondent before he is even duly notified that a hearing will be conducted. Again, the statute does not provide for, or appear to contemplate, a public hearing. Such a Star Chamber proceeding is not consistent with due process of law.

Again, the statute delegates to this administrative body unlimited authority "to prescribe its own rules of procedure."

The General Assembly has prescribed at length and in detail the procedure by which the several courts of justice in this State are to hear the parties and determine the facts in both civil and criminal actions, but this administrative body is set free to sail on an uncharted sea, to write its own rules of procedure, and to amend them at will. This is "delegation run riot" and violates both Art. II, § 1, and Art. I, § 6, of the Constitution of North Carolina. It is no answer to say the statute provides the respondent judge must be "given a hearing affording due process of law" when the statute, itself, gives the Commission unbridled discretion to prescribe and amend its rules of procedure and confers upon it the combined roles of investigator, accuser, prosecutor and finder of fact.

The statute authorizes the Commission to recommend, and this Court, upon such recommendation, to impose the extreme penalty of removal from office, forfeiture of retirement benefits and disqualification, for life, to hold any judicial office, if, by such a proceeding, the Commission finds the judge has been guilty of "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." This does not mean wilful misconduct, for that word "wilful," specifically used to modify "misconduct in office," is omitted in this specification. It does not mean misconduct in office, or criminal conduct in or out of office, or habitual intemperance on or off the bench, or neglect of official duties, for all of these things are specified by the statute as distinct grounds for censure or removal. What conduct, not falling within any of these other specified categories of behavior, constitutes "conduct prejudicial to the administration of justice that brings the judicial office into disrepute?" The statute does not say. No judge can possibly determine, in advance of Commission action against him, what conduct by him, in or out of his courtroom, will be asserted by the Commission as ground for his censure or removal. Could it be supposed for a moment that, consistent with the Due Process Clause, a fine of fifty dollars or a sentence to imprisonment for twenty-four hours could be imposed for "conduct prejudicial to the administration of justice that brings the judicial office in disrepute?" Yet, this statute provides that this Commission can recommend and this Court thereupon can impose, ex post facto, removal from office upon this charge, *and that is precisely the charge on which Judge Crutchfield is now censured.* If ever there was a "vague and over broad" statutory statement of a ground for the imposition of punishment, it is this one—"con-

duct prejudicial to the administration of justice that brings the judicial office into disrepute." The Due Process Clause simply will not permit censure or removal of a judge upon such a charge. See: *In Re Burrus,* 275 N.C. 517, 531, 169 S.E. 2d 879; *Surplus Store, Inc. v. Hunter,* 257 N.C. 206, 125 S.E. 2d 764; *State v. Hales,* 256 N.C. 27, 32, 122 S.E. 2d 768; 16 AM. JUR. 2d, Constitutional Law, § 552; 16A C.J.S., Constitutional Law, § 580.