IN THE SUPREME COURT OF NORTH CAROLINA

No. 370A16

Filed 5 May 2017

IN RE: INQUIRY CONCERNING A JUDGE, NO. 15-222
DAVID Q. LABARRE, Respondent

This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered 26 September 2016 that Respondent David Q. LaBarre, an Emergency Judge of the General Court of Justice, be censured for conduct in violation of Canons 1 and 2A of the North Carolina Code of Judicial Conduct, and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376. This matter was calendared for argument in the Supreme Court on 22 March 2017, but determined on the record without briefs or oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure and Rule 2(c) of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission (2015).

*No counsel for Judicial Standards Commission or Respondent.*

ORDER

The issue before this Court is whether Judge David Q. LaBarre (Respondent) should be censured for violations of Canons 1 and 2A of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice that

brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). Respondent has not challenged the findings of fact made by the Judicial Standards Commission (the Commission) or opposed the Commission's recommendation that he be censured by this Court.

On 25 April 2016, the Commission Counsel filed a Statement of Charges against Respondent alleging that he had

> engaged in conduct inappropriate to his judicial office when, on December 16, 2015, he drove his vehicle recklessly and while substantially impaired, putting at risk his own life and the lives of others [and that] Respondent's belligerent, offensive, and denigrating behavior towards the responding law enforcement officers and emergency personnel was outrageous and unbecoming of a judicial officer, bringing into question whether it is appropriate for the Respondent to continue to serve as an Emergency Judge.

According to the allegations in the Statement of Charges, Respondent's driving while substantially impaired and belligerent behavior towards law enforcement officers and emergency personnel violated Canons 1 and 2A of the North Carolina Code of Judicial Conduct. As a result, Commission Counsel asserted that Respondent's actions "constitute[d] conduct prejudicial to the administration of justice that brings the judicial office into disrepute, or otherwise constitutes grounds for disciplinary proceedings pursuant to Article 30 of Chapter 7A of the General Statutes of North Carolina."

*Order of the Court*

On 3 June 2016, Respondent filed an answer in which he admitted the factual allegations in the Statement of Charges and expressed remorse "for this uncharacteristic lapse in judgment." On 2 August 2016, Respondent and Commission Counsel filed a number of joint evidentiary, factual, and disciplinary stipulations as permitted by Commission Rule 22 that tended to support a decision to censure Respondent. Also, Respondent "voluntarily resigned his commission as an Emergency Judge, and agree[d] not to seek another commission in the future." On 12 August 2016, the Commission heard this matter.

On 26 September 2016, the Commission filed a Recommendation of Judicial Discipline, in which it made the following findings of fact:

> 1.  Respondent served honorably as a District Court Judge in Durham County from 1978 until 1994. He was appointed Chief District Court Judge on 3 January 1985 and served as Chief District Court Judge of Durham County from 3 January 1985 through 12 January 1990. Respondent was elected and served honorably as a Superior Court Judge in Durham County from 1994 until his retirement in 2002. Respondent was commissioned by the Governor as an Emergency Superior Court Judge and an Emergency District Court Judge in January 2003 and January 2004 respectively.
>
> 2.  Shortly before 11:00 p.m. on 16 December 2015, the Durham Police Department received a call from a concerned driver reporting a suspected drunk driver. The caller provided the license plate number and indicated that the vehicle was driving northbound on Hillandale Road in Durham, North Carolina. The caller also reported that this vehicle had nearly hit four (4) other vehicles.
>
> 3.  After checking the license plate number

provided by the caller, Durham Police Officer J. A. Alcala determined that the vehicle was registered to Respondent, whose address was listed as near where the vehicle had been observed. In response, Officer Alcala drove to the registered address for the vehicle. Upon arriving at the apartment complex where the vehicle was registered, Officer Alcala observed a vehicle with the license plate number that matched the number reported to the police.

4. As Officer Alcala approached the vehicle, he noticed that the engine was still running and noted the only occupant, later identified as Respondent, was a male slumped over in his seat and who appeared to be sleeping at the wheel. The officer also noticed that the vehicle was still in drive with Respondent's foot on the brake. After knocking on the window and waking him, Respondent opened the vehicle's window, at which time Officer Alcala detected a strong odor of alcohol emanating from Respondent. Because of Respondent's level of impairment, another officer who arrived at the scene had to put the car in park as Respondent was unable to do so himself.

5. When Respondent finally exited his vehicle, he was unable to stand on his own without leaning against the vehicle, his speech was slurred, and he was unable to comprehend many of the officer's questions or follow basic instructions necessary for the officer to perform several field sobriety tests.

6. At approximately 11:25 p.m., at the officer's request, Respondent submitted to an initial portable breath test, which registered a positive result for the presence of alcohol. When asked to provide the requisite second sample, however, Respondent became belligerent, used offensive and vulgar expletives towards the officer, and refused to submit to a second test. Officer Alcala called Durham County Emergency Medical Services (EMS) to the scene to evaluate Respondent for a possible medical emergency. While waiting for Durham County EMS to arrive, Respondent continued to use vulgar language and expletives towards the police officers at the scene as they

attempted to help him remain steady.

7.      While at the scene, Officer Alcala examined Respondent's vehicle and noticed fresh damage and paint transfer on the right corner of the front bumper.  The officer also observed the rear left tire rim was cracked and the front right tire had grey marks consistent with being scraped on a curb.  While the officer was inspecting the vehicle, Respondent again directed expletives and rude statements towards the officer.  Respondent's use of vulgar language and expletives towards law enforcement officers at the scene continued as they asked him routine questions and attempted to help him contact a family member.

8.      When EMS arrived, Respondent refused to cooperate as they tried to take his vital signs, and he directed the same vulgar language and expletives towards EMS personnel as he had towards the police officers.  Respondent was transported by ambulance to the local hospital after concerns were raised about his health and level of impairment.  Respondent's offensive language continued throughout the ride to the local hospital.

9.      The ambulance carrying Respondent arrived at the hospital at approximately 12:20 a.m. on 17 December 2015.  After his admission, Respondent continued to use vulgar language and expletives towards police officers who were present.  In addition, Respondent refused to submit to a blood draw to determine his level of impairment, forcing Officer Alcala to secure a search warrant to obtain a sample of Respondent's blood.  During the interim period, Respondent again continued to direct expletives towards other officers and workers trying to assist him.

10.      Officer Alcala returned to the hospital with a search warrant for Respondent's blood, and at approximately 2:20 a.m., a sample of Respondent's blood was taken by a nurse and submitted to the N.C. State Crime Laboratory for analysis.  After the blood draw, Respondent was issued a citation for driving while

impaired and released into the care of his family.

11.     A true and correct copy of the Durham County Police Report detailing this incident and Respondent's arrest is attached to the Stipulation as Exhibit 1.

12.     The matter of State v. David Q. LaBarre, Durham County file number 15CR3988, was heard on 5 February 2016.  On that date, Respondent appeared with counsel, and entered a plea of guilty to driving while impaired.  Respondent was placed on twelve (12) months of unsupervised probation, ordered to obtain a substance abuse assessment and complete any recommended education or treatment, pay a $100.00 fine, court costs and community service fee, to complete twenty-four (24) hours of community service, and comply with other conditions of probation.

13.     Respondent has paid all court ordered financial obligations, completed the court ordered substance abuse assessment and recommended education/treatment, and has completed the court ordered community service.

(Citations omitted.)  Based upon these findings of fact, the Commission concluded as

a matter of law that:

## A. **Driving While Impaired**

1.     Canon 1 of the Code of Judicial Conduct sets forth the broad principle that "[a] judge should uphold the integrity and independence of the judiciary."  To do so, Canon 1 requires that a "judge should participate in establishing, maintaining, and enforcing, and should personally observe, appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved."

2.     Canon 2 of the Code of Judicial Conduct generally mandates that "[a] judge should avoid

impropriety in all the judge's activities." Canon 2A specifies that "[a] judge should respect and comply with the law and should conduct himself/herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

3. The clear, cogent and convincing evidence supporting the Commission's findings of fact show[s] that Respondent violated the criminal laws of the State of North Carolina by driving while impaired, thereby putting the lives of others and himself at risk.

4. Respondent agrees that by driving while impaired in violation of the criminal laws of the State of North Carolina, he acted in violation of Canon 1 of the North Carolina Code of Judicial Conduct and Canon 2A of the North Carolina Code of Judicial Conduct, and engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C. Gen. Stat. § 7A-376.

5. Based upon the agreement of Respondent and the clear, cogent and convincing evidence supporting the Commission's findings of fact that Respondent violated the laws of the State of North Carolina by driving while impaired, the Commission concludes that Respondent: (1) failed to personally observe standards of conduct to ensure the integrity and independence of the judiciary is preserved, in violation of Canon 1 of the North Carolina Code of Judicial Conduct; and (2) failed to respect and comply with the law and to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A of the North Carolina Code of Judicial Conduct.

6. The Commission further concludes that the facts and circumstances aggravate this misconduct to a level warranting more than a private letter of caution. Accordingly, Respondent's violations of Canon 1 and Canon 2A of the Code of Judicial Conduct also amount to conduct prejudicial to the administration of justice that brings the

judicial office into disrepute, in violation of N.C. Gen. Stat. § 7A-376(b).

## B. Belligerent, Offensive and Denigrating Behavior Towards Law Enforcement and Emergency Personnel

7. The clear, cogent and convincing evidence supporting the Commission's findings of fact show[s] that Respondent engaged in belligerent, offensive and denigrating behavior towards local law enforcement and emergency personnel as they executed their official duties and attempted to assist Respondent during the incident underlying these proceedings.

8. Respondent agrees that by his belligerent, offensive, and denigrating behavior towards law enforcement and emergency personnel, he acted in violation of Canon 1 and Canon 2A of the North Carolina Code of Judicial Conduct, and engaged in conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. §[ ]7A-376.

9. Based upon the agreement of Respondent and the clear, cogent and convincing evidence supporting the Commission's findings of fact, the Commission concludes that Respondent: (1) failed to personally observe standards of conduct to ensure the integrity and independence of the judiciary is preserved, in violation of Canon 1 of the North Carolina Code of Judicial Conduct and (2) failed to conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A of the North Carolina Code of Judicial Conduct.

10. The Commission further concludes that the facts and circumstances aggravate this misconduct to a level warranting more than a private letter of caution. Accordingly, Respondent's violations of Canon 1 and Canon 2A of the Code of Judicial Conduct also amount to conduct

prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of N.C. Gen. Stat. § 7A-376(b).

(Citations omitted.) Based upon these findings of fact and conclusions of law, the Commission recommended that this Court censure Respondent for "driving while impaired in violation of the laws of the State of North Carolina" and "engaging in belligerent, offensive and denigrating behavior towards law enforcement and emergency personnel of the State of North Carolina." The Commission based this recommendation on the Commission's earlier findings and conclusions and the following additional dispositional determinations:

> 1. Respondent agreed to enter into the Stipulation to bring closure to this matter and because of his concern for protecting the integrity of the court system. Respondent understands the negative impact his actions have had on the integrity and impartiality of the judiciary. Even after an esteemed judicial career spanning thirty-seven (37) years, Respondent acknowledges his behavior during this single incident has jeopardized the public's confidence in his ability to continue to serve fairly and impartially.

> 2. Respondent has voluntarily resigned his commission as an Emergency Judge, and agrees not to seek another commission in the future, in lieu of facing a more severe disciplinary recommendation.

> 3. Respondent has an excellent reputation in his community. The actions identified by the Commission as misconduct by Respondent appear to be isolated and do not form any sort of recurring pattern of misconduct. Respondent has been fully cooperative with the Commission's investigation, voluntarily providing information about the incident and fully and openly

admitting error and remorse.

    4.    Respondent's record of service to the judiciary, the profession and the community at large is otherwise exemplary. Respondent has been active in community and civic affairs, including service as chairman of the Deacons and chairman of the Trustees at Greystone Baptist Church.

    5.    Respondent agrees to accept a recommendation of **censure** from the Commission and acknowledges that the conduct set out in the stipulation establishes by clear and convincing evidence that his conduct is in violation of the North Carolina Code of Judicial Conduct and is prejudicial to the administration of justice that brings the judicial office into disrepute in violation of North Carolina General Statute § 7A-376(b).

    6.    Pursuant to N.C. Gen. Stat. § 7A-377(a5), which requires that at least five members of the Commission concur in a recommendation of public discipline to the Supreme Court, all seven Commission members present at the hearing of this matter concur in this recommendation to **censure** Respondent.

(Citations omitted.)

When reviewing a recommendation from the Commission in a judicial discipline proceeding, "the Supreme Court 'acts as a court of original jurisdiction, rather than in its typical capacity as an appellate court.'" *In re Mack*, ___ N.C. ___, ___, 794 S.E.2d 266, 273 (2016) (order) (quoting *In re Hartsfield*, 365 N.C. 418, 428, 722 S.E.2d 496, 503 (2012) (order)). In conducting an independent evaluation of the evidence, "[w]e have discretion to 'adopt the Commission's findings of fact if they are supported by clear and convincing evidence, or [we] may make [our] own findings.'"

*Id*. at ___, 794 S.E.2d at 273 (quoting *In re Hartsfield*, 365 N.C. at 428, 722 S.E.2d at 503 (alterations in original)). "The scope of our review is to 'first determine if the Commission's findings of fact are adequately supported by clear and convincing evidence, and in turn, whether those findings support its conclusions of law.'" *Id*. at ___, 794 S.E.2d at 274 (quoting *In re Hartsfield*, 365 N.C. at 429, 722 S.E.2d at 503).

After careful review, this Court concludes that the Commission's findings of fact, including the dispositional determinations set out above, are supported by clear, cogent, and convincing evidence in the record. In addition, we conclude that the Commission's findings of fact support its conclusions of law. As a result, we accept the Commission's findings and conclusions and adopt them as our own. Based upon those findings and conclusions and the recommendation of the Commission, we conclude and adjudge that Respondent should be censured.

Therefore, pursuant to N.C.G.S. §§ 7A-376(b) and -377(a5), it is ordered that Respondent David Q. LaBarre be CENSURED for violations of Canons 1 and 2A of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b).

By order of the Court in Conference, this the 3rd day of May, 2017.

s/Michael R. Morgan
For the Court

-11-

IN RE J.L.

*Order of the Court*

WITNESS my hand and the seal of the Supreme Court of North Carolina, this the 5th day of May, 2017.

Clerk of the Supreme Court


<u>s/J. Bryan Boyd</u>
Clerk