IN THE SUPREME COURT OF NORTH CAROLINA

No. 321A24

Filed 23 May 2025

IN RE INQUIRY CONCERNING A JUDGE, NO. 23-488


JASON P. KIMBLE, Respondent


This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered on 18 December 2024. The Commission recommends that respondent Jason P. Kimble, a Judge of the General Court of Justice, District Court Division, Judicial District 12, be censured for conduct in violation of Canons 1 and 2A of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376. This matter was calendared for argument in the Supreme Court on 12 February 2025 but determined on the record without briefs or oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure and Rule 2 of the Rules of Procedure in the Supreme Court in Judicial Standards Cases.

*No counsel for Judicial Standards Commission or respondent.*


PER CURIAM.

The issue before the Court is whether District Court Judge Jason P. Kimble, respondent, should be censured for violations of Canons 1 and 2A of the North

Carolina Code of Judicial Conduct—violations which amounted to conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of N.C.G.S. § 7A-376(b) (2023). Respondent entered a stipulation pursuant to Rule 18 of the Rules of the Judicial Standards Commission (Stipulation) in which Respondent stipulated to the facts surrounding his conduct.

## I.    Recommendation of the Judicial Standards Commission

### A. Findings of Fact

The recommendation of the Judicial Standards Commission (Commission) contains the following stipulated findings of fact.

1. At approximately 3:09 p.m. on September 25, 2023, the North Carolina State Highway Patrol, specifically Trooper Geoffrey C. Middlebrooks ("the Trooper"), responded to a vehicle collision involving two white passenger cars at the intersection of Turlington Road and Red Hill Church Road in Harnett County, North Carolina. The investigation and resulting arrest were captured on dash camera footage. The Trooper memorialized his investigation in an implied consent report summary with supporting documentation used in Driving While Impaired ("DWI") investigations.

2. Upon his arrival at the scene of the vehicle collision, the Trooper encountered Respondent getting out of a white GMC SUV . . . . During that initial interaction, Respondent admitted to "bumping" into the other white vehicle at the scene . . . , told the Trooper no one was injured, showed the Trooper the damage to the vehicles, and stated, "She hit the brakes and I couldn't hit them fast enough." It was at this time the Trooper observed someone seated in the front passenger seat of Respondent's SUV, Respondent's thirteen-year-old daughter.

3. After filling out paperwork related to the crash, the Trooper requested Respondent step out of his SUV and asked him how much alcohol he had had to drink. Respondent denied drinking any alcohol but said, "one busted in the car." Respondent initially refused the Trooper's request for a portable breath test ("PBT"), but when the Trooper informed Respondent he could smell alcohol on his person, Respondent replied, "I'm a District Court Judge," then agreed to take the PBT.

4. While preparing to administer the PBT, the Trooper asked Respondent again about his consumption of alcohol, to which Respondent admitted, "I had some earlier," and commented, "It isn't going to come back with zeros, it will come back to something," regarding the potential results of the PBT. The initial reading from the PBT returned a positive result of .22.

5. Following the positive PBT sample, the Trooper conducted a battery of Standardized Field Sobriety Tests. The Trooper attempted to administer the Horizontal Gaze Nystagmus test but was unable to do so as Respondent was unable to follow the relevant instructions. The Trooper also administered the Walk and Turn test, observing four out of eight clues, and the One Leg Stand test, observing three out of four clues. Following these tests, the Trooper administered the second PBT which returned a positive result of .23.

6. At the conclusion of these various tests, the Trooper informed Respondent that he was under arrest for DWI, after which Respondent failed to comply with the Trooper's instructions to place his hands behind his back and began moving away from and pleading with the Trooper for leniency. While placing the handcuffs on Respondent, the Trooper had to physically place Respondent on the trunk of his patrol vehicle to finish taking Respondent into custody. During this time, Respondent said to the Trooper, "You are going to ruin my career."

7. While in the patrol vehicle but before leaving the scene,

Respondent made multiple comments and pleas to the Trooper for leniency, invoking his judicial title, naming other State Highway Patrolmen he knew, and suggesting the Trooper charge him with careless and reckless driving instead of DWI. While the Trooper was outside of his patrol vehicle speaking with Respondent's daughter, the in-car camera captured Respondent saying, "You're a fucking asshole." Respondent then continued to request leniency while in route to the Harnett County Detention Center ("HCDC").

8. At the HCDC, Respondent submitted one breath test to the Intox-EC/IR-II machine, blowing a .23, then refused to submit to the mandatory second blow. Respondent was charged with DWI, reckless driving to endanger, misdemeanor child abuse, and failure to reduce speed in Harnett County court file number 23CR420511-420. Further, due to his failure to submit to the second breath test, Respondent's driver's license was suspended for one year.

9. On September 26, 2023, Respondent called the Commission and was advised by staff to self-report this conduct, which he did the same day.

10. On April 4, 2024, Respondent pled guilty in Harnett County district court to one count of DWI pursuant to a plea agreement and received a Level One DWI judgment due to the presence of one grossly aggravating factor (driving, at the time of the offense, while a child under the age of 18 was in the vehicle) and one aggravating factor (having an alcohol concentration of at least 0.15 within a relevant time after driving). Respondent was sentenced to 24 months in the misdemeanant confinement program and received credit for the 60 days he spent in an inpatient treatment facility after his arrest. Special conditions of Respondent's probation included that he: (1) pay fines and costs of $543, (2) obtain a substance abuse assessment, monitoring, or treatment, (3) surrender his driver's license and not operate a motor vehicle until his privilege is restored by the Department of Motor

Vehicles, (4) continue ongoing treatment and provide monthly proof to the prosecution, (5) waive his right to appeal, and (6) abstain from alcohol consumption for thirty days and submit to continuous alcohol monitoring. The remaining charges were dismissed pursuant to Respondent's plea.

11. Respondent's arrest and subsequent conviction garnered media attention in and around Harnett County, a county which falls within Respondent's judicial district and where he regularly presides over court sessions.

(Citations omitted.)

## B. Conclusions of Law

Based upon the foregoing findings of fact, the Commission made the following conclusions of law:

1. Canon 1 of the Code of Judicial Conduct sets forth the broad principle that "a judge should uphold the integrity and independence of the judiciary." To do so, Canon 1 requires that a "judge should participate in establishing, maintaining, and enforcing, and should personally observe, appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved."

2. Canon 2A of the Code of Judicial Conduct generally mandates that "a judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

3. Upon the Commission's independent review of the stipulated facts concerning Respondent's conduct on September 25, 2023, during his DWI arrest, and Exhibit 1 included with the Statement of Charges and Stipulation, the Commission, by unanimous vote of the hearing panel concludes that Respondent:

a. failed to respect and comply with the law and conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary in violation of Canons 1 and 2A of the Code.

The Commission notes that Respondent conceded in the Stipulation that the facts were sufficient to support these conclusions.

4. The Commission further concludes, and accepts Respondent's admission, by unanimous vote of the hearing panel, that the facts establish Respondent engaged in willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of N.C. Gen. Stat. § 7A-376(b). *See also* Code of Judicial Conduct, Preamble ("a violation of this Code of Judicial Conduct may be deemed conduct prejudicial to the administration of justice that brings the judicial office into disrepute.").

5. The North Carolina Supreme Court defined "willful misconduct in office" as "improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally in bad faith. It is more than a mere error of judgment or an act of negligence." *In re Edens*[,] 290 N.C. 299, 305 (1976). The Supreme Court further held in *In re Nowell*, 293 N.C. 235 (1977), while willful misconduct in office necessarily encompasses "conduct involving moral turpitude, dishonesty, or corruption," it also can be found based upon "any knowing misuse of the office, whatever the motive." *Id.* at 248. The Supreme Court further held "these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond a legitimate exercise of his authority constitutes bad faith." *Id.*

6. In reaching this conclusion, the Commission weighed the Respondent's conduct on September 25, 2023, with

the remedial actions that he has since taken, while also considering analogous matters that the Commission and Supreme Court have considered in the past.

7. In the case at hand, the Commission was extremely troubled by Respondent's behavior surrounding Respondent's arrest on September 25, 2023, given that [(]1) notwithstanding Respondent was scheduled for an administrative day, the event occurred on an otherwise regular work day during regular court hours, (2) Respondent was picking up his minor child from school at the time, (3) Respondent had his minor child in the car with him while he was extremely intoxicated, (4) Respondent utilized his judicial title in an attempt to avoid criminal prosecution, and (5) Respondent was otherwise uncooperative, exhibiting behavior unbecoming of a judge in his interactions with law enforcement while at the scene.

8. However, the Commission also acknowledged that Respondent has conducted himself in an exemplary manner since his arrest by (1) self-reporting his conduct to various entities, including the Commission, (2) immediately submitting himself to inpatient rehabilitation, (3) accepting criminal responsibility for his actions by pleading guilty to DWI on April 4, 2024, (4) accepting responsibility for his judicial misconduct on November 8, 2024, at his Commission hearing and fully cooperating with the Commission's investigation, and (5) based on reports from himself and others, taking the steps necessary to maintain his sobriety.

9. In balancing these interests, the Commission aims to be consistent in its recommendations guided by and relying upon precedent from the North Carolina Supreme Court in a similar matter, *In re LeBarre*, 369 N.C. 538, 798 S.E.2d 736 (2017). In *LeBarre*, the respondent judge received a censure for his conduct surrounding his arrest for and later guilty plea to DWI. *Id.* In *LeBarre*, the respondent judge was found by law enforcement in the driver's seat, slumped over the steering wheel of his vehicle while it was still running

in a highly intoxicated state. *Id.* Further, at the scene and continuing to the hospital where his blood was eventually drawn, the respondent judge refused to cooperate with law enforcement officers and emergency personnel and was rude to them, directing expletives and other vulgar language at them. *Id.* The respondent judge in *LeBarre*, a judge with an otherwise unblemished 37-year judicial career, also accepted responsibility for his conduct by entering a guilty plea to DWI, resigning his commission as an emergency judge, agreeing not [to] seek a commission in the future, and stipulating to the facts and disposition of a censure, which was adopted by the North Carolina Supreme Court in its opinion. *Id.* Further, like Respondent, this respondent judge had significant support, enjoyed a good reputation within his community, and readily admitted his error and remorse to the Commission. *Id.*

10. The Commission also noted the Supreme Court's issuance of a public reprimand in *In re Shipley*, 370 N.C. 595, 811 S.E.2d 556 (2018), to the respondent Deputy Commissioner on the North Carolina Industrial Commission ("respondent commissioner") for being charged with DWI after getting into a traffic accident and registering a BAC of .08. However, the Commission found this case distinguishable from the facts in this matter, and less persuasive than *LeBarre* because the DWI was later voluntarily dismissed by the District Attorney's Office, there was no evidence that the respondent commissioner failed to comply with law enforcement or otherwise acted inappropriately on the scene, and there was no other aggravating factors (e.g.[,] a high BAC, a child being in the car, etc.). *Id.*

11. As a result, the Commission concludes, and Respondent agrees, that a censure in this matter would be consistent with prior disciplinary actions taken by the Supreme Court in matters with analogous facts and circumstances.

12. The North Carolina Supreme Court in *In re Crutchfield*, 289 N.C. 597 (1975) first addressed sanctions under the

Judicial Standards Act and stated that the purpose of judicial discipline proceedings "is not primarily to punish any individual but to maintain due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges." *Id.* at 602.

13. The Commission and Respondent acknowledge the ultimate jurisdiction for the discipline of judges is vested in the North Carolina Supreme Court pursuant to Chapter 7A, Article 30 of the North Carolina General Statutes, which may either accept, reject, or modify any disciplinary recommendation from the Commission.

(Cleaned up.)

## C. Recommendation

Based on the foregoing findings of fact and conclusions of law, the Commission, by unanimous vote of the hearing panel, recommended that the North Carolina Supreme Court censure respondent.

## II. Analysis

The Code of Judicial Conduct was established "in furtherance of an independent and honorable judiciary," which is "indispensable to justice in our society." N.C. Code of Jud. Conduct, pmbl. A violation of this Code of Judicial Conduct may be deemed conduct prejudicial to the administration of justice where that violation brings the judicial office into disrepute, or for willful misconduct in office, or for other grounds for disciplinary proceedings pursuant to Article 30 of Chapter 7A of the General Statutes of North Carolina. For such violations, the Judicial Standards Commission conducts a hearing, which is "neither a civil nor a

criminal action." *In re Nowell*, 293 N.C. 235, 241 (1977). The purpose is not primarily to punish the individual but to ensure the conduct of one exercising judicial power maintains the "due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges." *In re Crutchfield*, 289 N.C. 597, 602 (1975).

This Court, upon the Commission's recommendations, has the authority and responsibility to discipline judges by issuing a public reprimand, censure, suspension, or removal of a judge "for willful misconduct in office, willful and persistent failure to perform the judges' duties, habitual intemperance, conviction of a crime involving moral turpitude, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute." *In re Foster*, 385 N.C. 675, 689–90 (2024) (quoting N.C.G.S. § 7A-376(b) (2023)).

Conduct is prejudicial to the administration of justice and constitutes willful misconduct when a judge intentionally, improperly, or wrongfully uses the power of the office with gross unconcern for his or her conduct and in bad faith. *Id.* 385 N.C. at 690. We look "not so much upon the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers." *In re Edens*, 290 N.C. 299, 306 (1976) (quoting *Crutchfield*, 289 N.C. at 603).

When reviewing the Commission's recommendations, this Court acts as a court of original jurisdiction rather than as an appellate court. *In re Badgett*, 362 N.C. 202,

207 (2008) (quoting *In re Daisy*, 359 N.C. 622, 623 (2005)). "[T]his Court must first determine if the Commission's findings of fact are adequately supported by clear and convincing evidence, and in turn, whether those findings support its conclusions of law." *Id.* at 207. While each case is decided solely by its own facts and the Commission's recommendation is not binding on this Court, if this Court does adopt the Commission's findings of fact, it may choose to also "adopt the Commission's recommendations or exercise independent judgment as to the appropriate sanction." *In re Foster*, 385 N.C. at 690.

After reviewing the record and noting that respondent has stipulated to the Commission's findings of fact, we conclude the Commission's findings are supported by clear and convincing evidence, and we adopt them as our own. The Commission's conclusions of law are supported by those facts, so we adopt the Commission's conclusions of law. By extension, we agree with the Commission's conclusions that respondent's conduct violates Canons 1 and 2A of the North Carolina Code of Judicial Conduct, is prejudicial to the administration of justice, and brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b).

Because respondent has violated Canons 1 and 2A of the North Carolina Code of Judicial Conduct and N.C.G.S. § 7A-376(b), we must now decide whether to accept the Commission's recommendation of censure or exercise our independent judgment as to the appropriate sanctions. Our guidepost in determining the appropriate sanctions is the impact of the conduct on public confidence in our judicial system and

ensuring the honor and integrity of judges who serve the people of this State. *In re Crutchfield*, 289 N.C. at 602. Censure is appropriate where "a judge has willfully engaged in misconduct prejudicial to the administration of justice that brings the judicial office into disrepute." N.C.G.S. § 7A-374.2(1) (2023). This Court has previously censured judges for driving while intoxicated, acting disrespectfully to the responding law enforcement officers, and attempting to use their office to avoid the legal ramifications of their conduct. For example, in *In re LaBarre*, the Court censured a judge who was found intoxicated while sitting in the driver's seat of a running vehicle. 369 N.C. 538, 540 (2017). The respondent judge refused to cooperate with law enforcement and was rude to both law enforcement and emergency personnel. *Id.* Although the respondent judge had an esteemed judicial career and reputation, acknowledged his behavior's impact on public confidence, and voluntarily resigned his commission as an emergency judge, this Court concluded that censure was appropriate. *Id.* at 544–46.

In contrast, in *In re Shipley*, this Court agreed with the Commission's recommendation for a public reprimand where respondent, a Deputy Commissioner on the North Carolina Industrial Commission, was charged with driving while intoxicated. 370 N.C. 595 (2018). In *In re Shipley*, the respondent's charge was later dismissed and there was no evidence that he failed to comply with law enforcement or otherwise acted inappropriately. *Id.* at 598.

We conclude that the facts of this case are more closely akin to *LeBarre* although more egregious than the misconduct in *LeBarre*. Here, respondent was driving while intoxicated—with his minor child in the car—and he was involved in an accident which endangered the safety of his child and another driver. Additionally, respondent had an extremely high blood alcohol level and was driving while intoxicated during normal work hours. Because of these aggravating factors, we requested additional briefing from the parties to consider whether censure was, in fact, the appropriate recommendation. Neither the Commission nor respondent provided additional briefing.

The Court concludes that the Commission's findings of fact establish that respondent did, in fact, willfully engage in misconduct prejudicial to the administration of justice. Although respondent's behavior on the day of the incident here was more troubling and severe than the behavior leading to the censure issued in *LeBarre*, we appreciate that respondent self-reported the incident to the Commission, immediately underwent treatment for alcohol abuse, and cooperated with the Commission's investigation. Respondent recognizes that his conduct warrants disciplinary consequences and agreed to the recommended action. Weighing the severity and extent of respondent's misconduct against his acknowledgement and cooperation, we conclude that the Commission's recommendation of censure is appropriate and supported by the Commission's findings of fact and conclusions of law. Although we have ultimately decided to accept

the Commission's recommendation of censure, we emphasize that, under these facts, censure is the minimum acceptable consequence for respondent's conduct.

The Supreme Court of North Carolina orders that respondent Jason P. Kimble be CENSURED for conduct in violation of Canons 1 and 2A of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute and willful misconduct in office in violation of N.C.G.S. § 7A-376(b).

Justice BERGER concurring.

District court judges function where the law meets the average citizen—domestic cases, traffic offenses, relatively minor violations of criminal law. They are not shielded from public view like monks in the judicial monastery but are the real faces of justice in their communities. With this comes somewhat of an obvious truth: a judge who cannot govern his own conduct has no claim to govern anyone else's.

I would not write separately if respondent had done the appropriate thing and resigned, or if this were the run of the mill Level V DWI that respondent here sees every day: a .08 alcohol concentration where the defendant was polite and cooperative. But it was not. This was a Level I DWI where a sitting judge was involved in an accident, blew a .23 on the Intox EC/IR II before refusing his second sample, had his minor child in the vehicle, attempted to use his judicial position to influence the state trooper, was belligerent to the state trooper, and then called the state trooper "a fucking asshole."

Certainly, judges have faults and make mistakes just like anyone else. They are regular people who, on occasion, may drink too much, have heated disagreements with spouses or coworkers, and show emotion when mishaps occur. These behaviors are not atypical, even for judges, and there is some measure of grace that should be

available for screw ups and lapses of judgment.  People are people, and judges do not cease being human simply because they put on a robe.

But the consequence here should be more than mere finger wagging.

If this Court's "guidepost in determining the appropriate sanctions is the impact of the conduct on public confidence in our judicial system and ensuring the honor and integrity of judges who serve the people of this state," *In re Foster*, 385 N.C. 675, 690–91 (2024), then we have fallen short.

Because the tradition of this Court is for unanimity in Judicial Standards cases, I reluctantly concur.